JOE LIBERTO AND JAMES H. MOTHERSHED *v.*
STATE OF ARKANSAS

5468                                    451 S. W. 2d 464

Opinion delivered March 23, 1970

*Thomas C. Pitts,* for appellants.

*Joe Purcell,* Attorney General; *Don Langston* and *Mike Wilson,* Asst. Attys. Gen., for appellee.

CONLEY BYRD, Justice. Appellants Joe Liberto and James H. Mothershed were convicted of keeping a gambling house contrary to Ark. Stat. Ann. § 41-2001 (Repl. 1964), which provides:

> "Every person who shall keep, conduct or operate, or who shall be interested, directly or indirectly, in keeping, conducting or operating any gambling house, or place where gambling is carried on, or who shall set up, keep or exhibit, or cause to be set up, kept or exhibited, or assist in setting up, keeping or exhibiting, any gambling device, or who shall be interested directly, or indirectly in running any gambling house, or in setting up and exhibiting any gambling device or devices, either by furnishing money, or other articles for the purpose of carrying on any gambling house, shall be deemed guilty of a felony, and on conviction thereof, shall be confined in the State penitentiary for not less than one [1] year nor more than three [3] years."

For reversal, appellants rely upon the following eight points:

"I  The court erred in overruling the defendants' motion to suppress the evidence and quash the search warrant.

II. The court erred in permitting Clyde Miller, a witness for the State, to introduce and testify that certain pieces of paper were betting slips based upon hearsay evidence or what an informant told him they were.

III. The Court erred in permitting Bill Young, a witness for the State, to testify as to conversations he had with persons on the telephone while the officers were in the process of executing the search warrant.

IV. The Court erred in permitting Forrest Reynolds, a witness for the State, to testify about telephone calls placed to and from the telephones in the defendant Mothershed's home, based upon the records of the local Southwestern Bell Telephone Company.

V. The Court erred in permitting Johnny Etter, a witness for the State, to testify pertaining to blocks of accoustical material with numbers thereon which he had no personal knowledge of.

VI. The Court erred in overruling the defendants' motion for a directed verdict at the conclusion of the State's case.

VII. The Court erred in refusing to give defendants' requested instructions number one, two and three.

VIII. The verdict of the jury is based upon speculation and conjecture."

The record shows that Ralph Hampton, a Fort Smith Police officer, was investigating alleged gam-

bling law violations. About 8:55 A. M. on February 11, 1969, he was in the Continental Restaurant and observed Mr. Liberto enter and go to the cashier's stand where he deposited a substance of paper resembling a folded newspaper. When Hampton went by the cashier's stand he observed on the paper the words "daily racing form" and that the female cashier put it under the stand. At about 9:05 A M. on the same date he observed Mr. Liberto on Midland Boulevard going to an establishment with a sign outside, "Martin's Garage". On February 14, at 8: A. M. he again observed Mr. Liberto at the Continental Restaurant. Mr. Liberto there got out of his vehicle with a sheaf of folded paper about ½ inch thick. Mr. Liberto went into the restaurant and came out in a minute or two empty-handed. Officer Hampton then followed Liberto and observed him make a series of stops at various businesses. In each instance Liberto got out of his car with a folded piece of paper in his hand, entered the business, stayed very briefly and came out empty-handed. Again Liberto went to Martin's Garage on Midland Boulevard and stayed until officer Hampton left.

Captain Bill Young of the Fort Smith Police Department was also engaged in investigating gambling activities in the city. He knew both Mr. Mothershed and Mr. Liberto. At about 10:00 A. M. on February 10th he saw Mr. Mothershed in the Continental Restaurant. When Mothershed finished his coffee he went to the check-out stand, paid his check and handed the waitress a piece of rolled-up paper with some money sticking out of it, which she put in her pocket. He had seen Mothershed carry papers that looked like newspapers in and out of his apartment. Captain Young was at Mothershed's apartment when officers were searching the apartment. While there he answered three telephone calls; one lady wanted "Joe" to bring some racing forms, one lady wanted to place a bet and a man asked if the "scratch" sheet was out. This all occurred while the raid was going on. Captain Young did not give Mr. Mothershed an opportunity to talk to any of the people that called.

Officer Clyde Miller testified that he also was engaged in investigation of gambling activities. On February 10, he saw Mr. Mothershed at the Continental Motel Restaurant. When Mothershed finished eating, walked to the cash register and paid his bill, he handed the waitress a guest check with some money which she put under the counter. On February 11, he saw Mr. Liberto go to apartment 7 at 1118 North J Street (Mothershed's apartment) with a racing form. On the 13th, Mr. Liberto again went to the apartment with racing forms—in fact, both defendants had been seen going to the apartment with racing forms. On February 17, Officer Miller, together with other officers, went to Mothershed's apartment with a search warrant for apartments No. 4 and 7. At that time officer Miller served the search warrant upon Mr. Mothershed and Mr. Liberto who were in Apartment No. 7. In the apartment they found two racing forms, two telephones, one numbered SU 3-4702 in the living room, and SU 3-4786 in the bedroom. Mr. Liberto tried to stuff some papers, etc., down the drain but Captain Miller stopped him. In this raid they obtained a black notebook marked off with letters A, B, C, D, E, F and so forth. Also a small hand stapler, a box of staples, rubber bands, scratch pads and betting slips were found in a cabinet drawer. In the trash can they also found some scratch pads and torn-up betting slips. During the search of the apartment, appellant Mothershed stated to the officers, "Boys, that's what you're looking for," referring to betting slips and other articles introduced as evidence. Mothershed also stated to Captain Miller, "Boys, we're going to do it. You may as well leave us alone. Gambling is just like drinking whisky. People are going to gamble—they're going to drink whisky. It's my job. I'm not going to stop."

Another officer, Johnny Etter, testified that he found some peg boards underneath a kitchen cabinet in apartment 7 and that he did not know what Mothershed was using the peg boards for.

Forrest Reynolds, a Southwestern Bell Telephone

Company employee, testified about telephone company records of numerous calls made from the telephones in appellants' premises to various cities and collect calls from various cities to appellants' telephones. Some of the cities were Hot Springs, Las Vegas, and San Pedro, California. No objection was made to the testimony of this witness but when the records were introduced appellant did object but saved no exceptions.

POINT I. Appellants, in arguing that there was no probable cause for the issuance of search warrants, admit that the affidavit on its face might be sufficient grounds for issuance of the search warrant, but then argue that when we examine the facts upon which the affidavit was based they fall far short of the standards of probable cause for the issuance of a search warrant required by *Aguilar* v. *Texas,* 378 U. S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964), and *Spinelli* v. *United States,* 393 U. S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969).

The affidavit sworn to by Officer Miller, upon which the search warrant was issued, provides:

"That he has reason to believe that on the premises known as 1118 North J Apartments No. 4 and No. 7 in the City of Fort Smith, County of Sebastian, State of Arkansas, there is now being concealed certain property, namely telephones SU 3-4702, SU 3-4786, scratch pads, racing forms, receipt books, business cards with phone numbers SU 3-4702, SU 3-4786, note books, ledgers, rubber stamps, which are believed to have been and are being used in connection with betting on horses.

"And that the facts tending to establish the foregoing grounds for issuance of a search warrant are as follows: Personal observation of this affiant of known gamblers entering and leaving the premises with racing forms in their possession, and personal knowledge of affiant that telephones over

which bets have been placed are listed as being in the premises."

At a hearing on the motion to supress the evidence obtained in the search, it was shown that Officer Miller did not actually have personal knowledge of bets being placed over the phones but that the knowledge was that of Officer Burns, also involved in the investigation. In addition to the information received by Officer Burns, the officers had received what might be termed a calling card, rubber stamped with the two telephone numbers. When counsel for appellants objected to introduction of testimony showing probable cause contrary to that contained in the affidavit, the trial court stated:

"Well, Mr. Pitts, I can tell you this that when this affidavit—these officers came to me, I put them under oath and examined them extensively with respect to the basis of their information and the reasons that they said that they knew these things, and for one thing I asked them, 'Why do you say that these phone numbers are incriminating? Anybody can have a telephone.' And they then told me about—they then gave me the information that he is testifying to now. I agree with you, it is not set out in the Affidavit, but in my capacity as a magistrate examining the credibility, so to speak, of the affiant, I did require him to go into this background information to connect these numbers with this activity."

The general rule is that, in the absence of a statute, a subsequent showing of the falsity of an affidavit for search warrant cannot retrospectively invalidate a warrant valid when it was issued. See *United States* v. *Brunett*, 53 F. 2d 219 (W. D. Mo. 1931); *United States* v. *Bowling*, 351 F. 2d 236 (6th Cir. 1965); and Annotation in 5 A. L. R. 2d 394. In *Rugendorf* v. *United States*, 376 U. S. 528, 11 L. Ed. 2d 887, 84 S. Ct. 825 (1964), the United States Supreme Court points out that it has never ruled on the question. As noted in the *Bolling*

case, *supra,* courts generally look with disfavor upon collateral attacks which are based on claims of falsity in the statements of an affidavit upon which a search warrant is issued.

Like the U. S. Supreme Court in *Rugendorf* v. *United States, supra,* the record before us supports a showing of probable cause whether we limit it to the affidavit or to the testimony that the trial judge said he had before him at the time he issued the search warrant. For either or both of the reasons stated, we find appellants' contention to be without merit.

POINTS II, V, IV, VI and VIII: We give no consideration to appellants' points II and V because no objections or exceptions were taken in the trial court. Neither do we give any consideration to appellants' point IV, because no exceptions were saved. Appellants' points VI and VIII, having to do with sufficiency of the evidence, we find without merit, because the above outlined testimony is ample to show that appellants maintained an establishment to receive and make bets on horse racing within the meaning of Ark. Stat. Ann. § 41-2001.

POINT III. Appellants here object to Captain Young's testimony that while he was in the apartment he answered three telephone calls, one from a lady who wanted Joe to bring some racing forms, another from a lady who wanted to place a bet and the third, a man who asked if the scratch sheet was out. These telephone calls were received in the presence of the two appellants. We pointed out in *Motors Insurance Corporation* v. *Lopez,* 217 Ark. 203, 229 S. W. 2d 228 (1950), that a statement made out of court is not hearsay if it is given in evidence for the purpose of proving that the statement was made, providing that the purpose is otherwise relevant in the case at trial. The statements here given were obviously relevant to show the use of the telephone numbers involved. See Annot., 13 A. L. R. 2d 1409. Therefore we find this contention without merit.

POINT VII. The trial court, in its instruction No. 7, instructed the jury as follows:

"Every person who shall keep, conduct or operate, or who shall be interested, directly or indirectly, in keeping, conducting or operating any gambling house, or place where gambling is carried on, or who shall be interested directly, or indirectly in running any gambling house shall be deemed guilty of a felony. An establishment maintained for the purpose of receiving and making bets on horse races is a gambling house within the meaning of law. If you find beyond a reasonable doubt either or both of these defendants within the Fort Smith District of Sebastian County, Arkansas, did commit the offense charged in the indictment and as just defined to you, you will find such defendant or defendants guilty thereof and fix his punishment at not less than one nor more than 3 years in the penitentiary. If you do not so find you should acquit such defendant or defendants."

Appellants' requested instruction No. 1, which the court refused, would require the jury to find beyond a reasonable doubt "that the defendants operated and maintained Apartment No. 7. . .as a place where those who do desire to engage in gambling may resort to and find shelter while engaging in their gambling practices." As can be seen from the statute, above, the keeping of a gambling house is not limited to a place where those engaged in gambling find shelter. For this reason the trial court properly refused appellants' requested instruction No. 1.

Appellants' requested instruction No. 2 would require the jury to find beyond a reasonable doubt that there was an actual wager between appellants and their customers before either defendant could be found guilty. Since the statute makes criminal the conduct of those who are interested directly or indirectly, the trial court properly overruled the instruction as it would require the jury to find that appellants were directly involved.

The trial court properly refused appellants' requested instruction No. 3. Instruction No. 3 would require the jury to find that an offer to bet on a horse race was made to appellants and that appellants themselves accepted said offer to bet. The instruction as offered was erroneous because it would require the jury to find defendants guilty of wagering before it could find them guilty of operating a gambling house.

Affirmed.