HARRY BENSON WILLIAMS *v.* STATE
OF MARYLAND

[No. 454, September Term, 1971.]

*Decided March 7, 1972.*

---

**2.** In view of our decision, there is no need for us to discuss the cross appeal.

620

The cause was argued before MURPHY, C. J., and THOMPSON and GILBERT, JJ.

*Gerald A. Kroop* for appellant.

*James G. Klair, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Robert N. Dugan, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

The appellant, Harry Benson Williams, was convicted in a non-jury trial by Judge Charles D. Harris in the

Criminal Court of Baltimore, of the charge of possession of heroin in sufficient quantity to reasonably indicate an intent to distribute the same. Article 27, § 286.

Appellant was sentenced to a term of 7 years under the jurisdiction of the Department of Correctional Services, with the additional proviso that the sentence would be served consecutively with a 5 year term previously imposed in another case.

The questions presented by the appellant are:

1. The constitutionality *vel non* of Article 27, § 286 (a) (1).

2. Whether or not the trial court erred in denying the appellant's motion to suppress.

3. The sufficiency of the evidence.

## THE FACTS

Detective Thomas West, of the Baltimore City Police Department, testified that he had received special training in the field of narcotics law enforcement and that prior to this case he had investigated 200 narcotics cases.

On July 27, 1971, at approximately 5:15 p.m., he met with a "reliable confidential informant at a pre-arranged location in Baltimore City." The informant had supplied Detective West with previous information that led to the arrest of 10 narcotics offenders and all arrests "resulted in convictions or indictments." The informant told the detective that the appellant was then "in possession of a large quantity of drugs" and the informant had "just purchased drugs from Harry Williams [the appellant]." The informant was familiar with the appellant's activities because he had supplied information to the officer relative to appellant on previous occasions. The informant further told Detective West that he [the informant] had "just copped drugs from Harry [appellant]." The informant stated to Detective West that Harry Williams was "walking north on Pimlico Avenue." West, accompanied by Officer Ronald Stewart, proceeded to that area and observed appellant walking north on

the east side of Pimlico Avenue. Detective West knew appellant because he had previously arrested him for possession of heroin. When the police vehicle neared appellant, the car was stopped and Detective West alighted from it. Appellant knew West, "looked over" at him and "began to run south on Pimlico Avenue, making a left turn into a small street or alley, which is a playground, * * * and while he was running" the detective "observed him" reach in his pocket, and "he withdrew the bag. The bag went flying. It was something similar to a sandwich bag." West said, "I could see caps in it, because caps were flying through the air also." After appellant threw the bag into the alley, West and Officer Stewart caught the appellant. When he was searched by the officers they recovered "forty glassine bags containing a white powder."

The powder and the capsules were analyzed and found to contain heroin hydrochloride. A total of 131 capsules were recovered.

Detective West informed the court that he examined appellant's arms and legs and found "No tracks on either arms or legs" nor did the appellant have "snort burns."

Detective West said that he placed appellant in the police vehicle, but before the *Miranda* warnings were given, the appellant made a spontaneous utterance that he would pay Detective West, and presumably Stewart, to release the appellant. Appellant was not charged, however, with attempted bribery. The appellant declined to testify in his own behalf, except on the motion to suppress.

## I

Appellant's first contention contains two prongs, (1) that Article 27, § 286 (a) (1), is unconstitutional because it is void for vagueness, and (2) the same section of Article 27 is unconstitutional because "* * * it forces a defendant to take the witness stand and admit to possession of narcotics in order to avoid the more severe penalty for possession with intent to distribute."

The first prong of appellant's assertion has recently

been answered by this Court in *Waller v. State,* 13 Md. App. 615 (1971). There, we held that the statute contained an ascertainable standard of guilt and that it was not so vague as to leave a person of ordinary intelligence in doubt as to the nature of the acts proscribed. We also said that the statute met the constitutional requirements of the Fourteenth Amendment to the Constitution of the United States. We think *Waller* to be dispositive of the question of vagueness and to need no further elaboration herein.

Turning to the second prong of the first question presented by the appellant, we note that the appellant declined to testify—an exercise of his constitutional right under the Fifth Amendment.

His argument that had he testified he would have been required to admit possession and hence a lesser offense made unlawful by Article 27, § 287, in order to exonerate himself of the greater offense, Article 27, § 286 (a) (1), in our opinion is devoid of merit.

In support of appellant's position, he cites *Marchetti v. United States,* 390 U. S. 39, 88 S. Ct. 697, 19 L.Ed.2d 889 (1968) ; *Grosso v. United States,* 390 U. S. 62, 88 S. Ct. 709, 19 L.Ed.2d 906 (1968) ; *Haynes v. United States,* 390 U. S. 85, 88 S. Ct. 722, 19 L.Ed.2d 923 (1968), and *Leary v. United States,* 395 U. S. 6, 89 S. Ct. 1532, 23 L.Ed.2d 57 (1969). None of those cases are factually apposite.

*Marchetti* and *Grosso* both dealt with non-payment of a Federally imposed gambling tax. The Supreme Court, through Mr. Justice Harlan, held that the Federal statutory obligation to register and pay an occupational tax for the business of accepting wagers required a person to come forth and admit to violation of the state law and hence to incriminate himself.

In *Haynes,* the Supreme Court reversed a conviction for violation of 26 U.S.C. 5851, i.e., knowingly possessing a sawed-off shot gun not registered with the Secretary of the Treasury in accordance with the requirement of 26 U.S.C. 5841. The court held that §§ 5841 and 5851

were indistinguishable insofar as the prosecution of Haynes was concerned, and that the requirement under § 5841 that he register constituted a violation of his Fifth Amendment rights.

*Leary* dealt with a statute which required one dealing with marihuana to register and pay an occupation tax, and also to pay a tax on a transfer of the marihuana. The Supreme Court held that the Marihuana Tax Act compelled Leary to expose himself to a "real and appreciable" risk of self-incrimination within the meaning of *Marchetti, Grosso* and *Haynes, supra.*

It is to be noted that each of the cases relied upon by the appellant requires that a person come forth and register with the United States Government, and by so doing immediately places State authorities upon notice that he is, has, or will, violate State laws proscribing the very act for which he is seeking a license.

Compliance with such laws will obviously trigger the State authorities into action. The individual is then caught on the horns of a dilemma and runs the "appreciable risk" which Mr. Justice Harlan found in *Marchetti.* If he registers, he subjects himself to a possible State violation. If he does not register, then he subjects himself to a Federal violation. The registration laws, such as the Marihuana Tax Act, were clearly violative of the Fifth Amendment rights against self-incrimination. Here, however, we are confronted with an entirely different matter. Maryland law does allow for registration of those persons desiring to *lawfully* manufacture, distribute or dispense a controlled dangerous substance. Article 27, §§ 276 through 285. It is the unlawful manufacturing, distributing or dispensing of a controlled dangerous substance that is prohibited and there is no requirement that those engaged in such an unsavory undertaking register with any State authority.

The *Marchetti, Grosso, Haynes* and *Leary* cases, *supra,* all involved an element of testimonial compulsion in that the petitioners were compelled, in order to comply with the law, to, in effect, testify against themselves. There

is no such "testimonial compulsion" in the Maryland Act. Appellant was not required to take the witness stand, and in fact he did not. We do not observe, as does the appellant, that he was limited in his defense to incriminating himself. If the appellant were in lawful possession of the controlled drugs under the provisions of the Act (§§ 276 through 285) and of the rules of the Drug Abuse Authority, such would be a defense.

We think the possession by the appellant of 131 capsules containing heroin and 40 glassine bags containing heroin gave rise to a justifiable inference that he was in possession of a "sufficient quantity" of heroin "to reasonably indicate under all circumstances an intent to * * * distribute, or dispense, a controlled dangerous substance." Article 27, § 286 (a) (1).

Appellant here was cloaked with the presumption of innocence until the State at the trial overcame that presumption with legally sufficient proof. *Lindsay v. State,* 8 Md. App. 100 (1969). At that point, the appellant could have (1) moved for judgment of acquittal at the end of the State's case; (2) rested and renewed his motion for judgment of acquittal previously denied, thereby placing the State in the position that the evidence offered by it would have to have convinced the trier of the facts that the matters to be proved directly or by a rational inference established guilt on the part of the appellant beyond a reasonable doubt; (3) offered probative evidence as to his lawful possession of the controlled narcotics through himself and others; (4) offered such evidence through others and not take the stand himself; (5) testified alone in his own behalf. The manners of defense enumerated herein are not to be interpreted as, or intended to be, all inclusive.

## II

Appellant's contention that the narcotics seized from him at the time of his apprehension were the fruits of an unlawful search and seizure is without merit. See

*Cleveland v. State,* 8 Md. App. 204 (1969), where it is said:

> "The general rule is that a warrantless arrest by a police officer is valid where he has probable cause to believe at the time of the arrest that a felony has been committed and that the person arrested committed it. *Simms v. State,* 4 Md. App. 160, 167. Probable cause exists in this context when the facts and circumstances within the knowledge of the arresting officer, or of which he had reasonable trustworthy information, are sufficient to warrant a reasonably cautious person in believing that a felony had been committed by the person arrested. *Michaels v. State,* 2 Md. App. 424. The rule of probable cause is a non-technical conception of a reasonable ground for belief of guilt, requiring less evidence for such belief than would justify conviction, but more evidence than that which would arouse a mere suspicion. *Terrell v. State,* 3 Md. App. 340."

See also *Cleveland v. State,* 12 Md. App. 712 (1971); *Tierney v. State,* 7 Md. App. 56 (1969); *Boddie v. State,* 6 Md. App. 523 (1969); *Brown v. State,* 5 Md. App. 367 (1968).

The officers' knowledge of the appellant's activities, the information received from the reliable informant, the flight from the officers when they were observed by appellant, and appellant's attempted discard of the "sandwich bag" containing the 131 capsules, obviously gave rise to probable cause for the officers to believe that at least a misdemeanor (unlawful possession of a proscribed drug) was being committed in their presence. See Maryland Code Article 27, Section 594 B.

### III

Lastly, appellant argues that the evidence was insufficient to support the conviction. Such an argument would

be germane if appellant's second contention had been successful. Inasmuch as we have found no merit in the appellant's second contention, the third argument must *a fortiori* fall of its own weight. The police officer's observations of appellant discarding the capsules containing heroin and the appellant's physical possession of 40 glassine bags containing heroin on his person, in addition to the lack of "tracks on either arms or legs" and of "snort burns" justified a finding by the trial judge of the appellant's guilt.

*Judgment affirmed.*