**Application of Forrest D. Aikins, for a Writ of Habeas Corpus.**

**Forrest D. AIKINS, Petitioner,**

**v.**

**A. E. GOMES, Warden, Arizona State Prison, Respondent.**

**No. Civ. 72–552 Phx. WPC.**

United States District Court, D. Arizona.

Nov. 27, 1972.

Flynn, Kimerer, Thinnes & Galbraith, Phoenix, Ariz., for petitioner.

Gary K. Nelson, Atty. Gen., State of Arizona, William P. Dixon, Asst. Atty. Gen., Phoenix, Ariz., for respondent.

## OPINION * AND ORDER

COPPLE, District Judge.

Petitioner seeks habeas corpus relief following his conviction in state court on charges of possession for sale of heroin and cocaine. He has exhausted his state remedies. State v. Aikins, 17 Ariz.App. 328, 497 P.2d 835 (1972), pet. denied, No. 2538–PR (Ariz. Sep. 14, 1972). A full and fair pretrial evidentiary hearing was held by the state trial court on respondent's Motion to Suppress which fully examined into that portion of the matters raised here. This Court has had the use of a transcript of both that hearing and the trial on the merits. Briefly, Arizona agents proceeded to the corner of Thirteenth Street and McDowell Road in Phoenix, Arizona, on the basis of a confidential informant's tip that petitioner would be arriving at that location in an automobile containing the

contraband. Some fifteen minutes later, petitioner did approach the intersection and stop, back up, and pull forward two times while looking around. He was arrested and his car searched without a warrant. The contraband was discovered in a secret compartment in the bottom of the trunk. Additional facts will be related as necessary.

A. E. Gomes has replaced Frank Eyman as Warden of Arizona State Prison. The substitution is automatic. Fed.R. Civ.P. 25(d)(1).

Aikins challenges the state proceedings on the basis that (1) the informant's tip did not furnish information sufficient to establish probable cause and the evidence therefore should have been suppressed; (2) the source of the informant's information was possibly an illegal wiretap; (3) petitioner was denied his sixth amendment right to confrontation by the refusal to disclose the informant; and (4) the evidence fails to support a conviction for the greater crime of possession for sale.

### Lack of Probable Cause

The contention over probable cause revolves around the well-known trilogy of Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The requirements for a warrantless search are at least as stringent as for obtaining a search warrant.[1] Petitioner apparently concedes that the first prong of *Aguilar*, the informant's reliability, is met,[2] so

---

* *See* 9th Cir. R.Prac. 21.

1. Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); Spinelli v. United States, 393 U.S. 410, 417 n.5, 89 S. Ct. 584, 589 n.5, 21 L.Ed.2d 637 (1969).

2. The confidential informant provided information to state agents from December 1968 to May 21, 1969, the date of arrest. His reliability is based on information furnished in two other cases. MS 45–46, 114–19. No attempt was made to run a background check on him. MS 40. The information he fur-

nished regarding Aikins fell into two distinct classes. The first related to irrelevant identity data—the cars petitioner drove, the places he lived. MS 38–39, 94–96. The second class was a purported selling scheme described in text, and included his making trips to Mexico and having a secret compartment in a pickup truck. MS 74–77. These last items and Aikins' contact with others in the purported scheme were never verified by the state before petitioner's arrest. MS 35–40, 103–04, 108–109, 111. The remainder of the information regarding the scheme was veri-

the question is whether the informant's source was sufficiently reliable that, upon it being related to the officer, the latter had probable cause to make the arrest and subsequent search.

The Arizona Department of Public Safety had the petitioner under surveillance from December 1968 until his arrest on May 21, 1969, based initially on the information of one Coleman, and subsequently on that of its confidential informant. Agent Moody was apparently in charge of the investigation, and it was he who received the ultimate tip and ordered agents to the point of arrest. Coleman's information is of no relevance here, as Moody considered him unreliable. Transcript of Hearing on Motion to Suppress, vol. 2, at 98 (MS 98).[3] Aguilar v. Texas, *supra*. The information on which the state must rely, then, came from the informant and its own surveillance. One class of that information is not directly relevant to establishing probable cause. The state discovered, upon investigating the informant's statements, that Aikins drove certain automobiles, owned and operated certain business, and lived in certain locations. MS 28–29; see note 2 *supra*. It also discovered that men claimed by the informant to be dealing with Aikins had indeed registered at Phoenix motels and made telephone calls to "known dealers" in other cities. MS 28–41, 96–114. No connection (except the informant's statement) was ever discovered connecting them to Aikins.[4] MS 38–40. A great deal of the testimony—and the information available for probable cause —therefore consists of "innocent-seeming activity and data" which will not support an arrest or search. Spinelli v.

United States, *supra*, 393 U.S. at 414, 89 S.Ct. at 588. There was sufficient corroboration before May 21 to believe that a scheme existed for the sale and purchase of drugs, however.

The crux of the case rests upon the informant's tip, delivered at 4:30 P.M., that he had overheard a telephone conversation in which he learned that Aikins would be at the arrest location with heroin in his car at 4:45 P.M. MS 42–43. It must not only have come from a reliable informant, but also the tip must show "the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were." Aguilar v. Texas, *supra*, 378 U.S. at 114, 84 S.Ct. at 1514. The mere statement by the informant that Aikins would be in possession of contraband at the indicated location would represent no more than "a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." Here the informant had for many months been substantially familiar with Aikins' activities, and had related to the state agents a comprehensive scheme of dealing so indicating. MS 26–29, 36–38, 41. This is not to suggest that the information relating to Aikins which agents were able to confirm prior to the day of the arrest constituted probable cause. That information, together with the confirmation of the informant's tips regarding the activities of those with whom Aikins was alleged to be dealing, however, would indicate to a disinterested magistrate that the overheard conversation was a reliable source and not a "casual rumor" or based on Aikins' general reputation. The informant had previously supplied

---

fied. MS 96–102, 104–111. Some of the background information came from a second confidential informer ("Informant II"), who is not at issue here. MS 105–108.

3. This transcript of two volumes and the four-volume trial transcript are each paginated consecutively; volume references will hereinafter be deleted.

4. Agent Audsley claimed to have seen Aikins in the company of Pinky Williams, one of

the alleged buyers, but the observation was from one and a half blocks away (with binoculars) in the late afternoon, and was never reported to any other agent, including Moody. MS 66–69. Petitioner correctly notes that it could not have contributed to the probable cause that must have formed in Moody's mind when he directed the arrest and search.

all the basic elements of a drug-dealing scheme except the crucial transfer from Aikins to the buyers. MS 96–113. He now furnished that element. While much of the previously confirmed information is unavailable in direct support of probable cause in this case, it does provide evidence of reliability to lend credence to the final tip. The information available showed that alleged buyers were in fact appearing at motels in Phoenix and making telephone calls to reputed narcotic dealers in other states, MS 92–114, tending to establish a connection between the otherwise innocent conduct of the third parties and illegal dealing. The agents knew who Aikins was. MS 33, 39. They had cause to believe a delivery scheme existed. Finally, the same person furnished specific delivery information.

This case is therefore unlike *Spinelli* in two respects. In *Spinelli* there were no allegations that third parties conducted activities tending to show a scheme of illegal activity. Second, the source of the information is provided. It would clearly be a more simple case if the informant had stated who he overheard and by what means, but there is nevertheless sufficient reliability shown by the totality of circumstances surrounding the tip.[5] United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed. 2d 684 (1965). The informant had fed the agents information over a five-month period, giving names and locations which proved true, and which fit the selling scheme alleged. It was therefore reasonable to infer that he had

substantial access to those closely connected to that scheme. *See* Spinelli v. United States, *supra*, 393 U.S. at 425, 428, 89 S.Ct. at 593, 595 (White, J., concurring). The agent was free to infer on the basis of the previously provided information and the state's surveillance, that the informant's source was either the petitioner or others intimately familiar with the operation. *See id.* at 426–27, 89 S.Ct. at 594. There is some ground for resting a holding of probable cause on the informant's tip and the likelihood that he was in a position to obtain accurate information. One additional factor makes that conclusion inescapable, however.

Upon arriving at the scene, the agents did not merely find Aikins, whom they knew, at the time stated. They discovered that he was engaged in suspicious activity. He neither continued through the intersection after stopping, nor did he park the car to pick up a rider. He acted in a manner which tended to confirm in the agents' minds that he was there to pick up a buyer and immediately proceed to a safe place for making the transfer.[6] His activity at that point would not by itself be sufficient to establish probable cause, *see* Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), but was sufficiently confirmatory of previous information to allow the arrest and search. Draper v. United States, *supra*. Mr. Justice White has commented upon the conflicts between *Draper* and the *Aguilar-Spinelli* standards by pointing out that *Draper*-like facts are important to establish reliability under the *Aguilar* standards in

---

5. Petitioner has argued that the informant, if he overheard any telephone conversation at all, either overheard Aikins and one Johnson, or some third parties relating no more than a rumor. It is irrelevant, ultimately, what conversation the informant overheard. The question is whether Agent Moody had sufficient information to believe the source reliable. Had the informant stated he overheard Aikins, this issue would undoubtedly not be before the Court. He made no statement beyond the fact that a telephone conversation existed. Moody had sufficient reason, based on past dealings and on the con-

firmatory arrival of Aikins at the intersection, to credit the source with accuracy.

6. Petitioner argues that the mere appearance of Aikins at the intersection is not probative. Tr. 272. This is not entirely true. Walking down a street may not be relevant; but walking on a street at the location of a felony within minutes of its commission, however small a piece of evidence, is probative. In any case, Aikins' appearance there acting in an out-of-the-ordinary manner is probative under *Draper*.

warrantless cases.[7] "[B]ecause an informant is right about some things [the arrival of the correct person at the correct time engaged in confirmatory behavior], he is more probably right about other . . . critical, unverified facts [possession of the contraband].[8] Spinelli v. United States, *supra*, 393 U.S. at 427, 89 S.Ct. at 594.

█ It is true that "[t]he word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." Coolidge v. New Hampshire, 403 U.S. 443, 461–462, 91 S. Ct. 2022, 2035, 29 L.Ed.2d 564 (1971); see "Warrantless Automobile Searches," 13 Ariz.L.Rev. 313, 341 (1971). Fifteen minutes notice that a crime was being committed in a moving vehicle obviated the necessity of a search warrant, however, and the search here is further buttressed by Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). *See* United States v. Mehciz, 437 F.2d 145 (9th Cir.), cert. denied, 402 U.S. 974, 91 S.Ct. 1663, 29 L.Ed.2d 139 (1971).

█ The information that a person known to the arresting agents would be at a certain intersection in possession of contraband, the general reliability of the informant, the apparent reliability of his source of information, and the confirmation of those facts, plus petitioner's out-of-the-ordinary action in driving the automobile, together would have indicated to an independent magistrate that probable cause existed to make the arrest and search the automobile. Draper v. United States, *supra*; Chambers v. Maroney, *supra*; *see* Spinelli v. United States, *supra*.

### The Informant and the Telephone

Petitioner's second and. third points are based on the rationale that the informant either overheard petitioner calling one Jackson, Transcript of Trial, vol. 3, at 280–91, 314–29 (Tr. 280–91, 314–29), which amounted to an illegal wiretap, or he overheard undisclosed third parties, rendering his information invalid under *Aguilar* and *Spinelli*.[9] Petitioner believes he met his burden on raising the issue, and it was incumbent on the state to produce the informant to determine whether there was in fact an illegal wiretap or its equivalent. In order to prevail Aikins must show (1) that the informant was an agent of the government and (2) that he bore his

7. Petitioner argued at the trial, Tr. 263, and urges by implication here, that *Spinelli* effectively overruled *Draper* on the question of source reliability (contra informant reliability). On the contrary, the *Spinelli* court found *Draper* a "suitable benchmark" for verification of the tip. See also Mr. Justice White's discussion of the two standards, *Spinelli*, 393 U.S. at 423, 89 S.Ct. at 592.

8. Petitioner cites Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), for the proposition that a *Draper* verification may not be used in a case where the informant's tip was not based on firsthand knowledge. Assuming that petitioner means that the sheriff's complaint in *Whiteley* was based on hearsay, and he was in the position of informant to the arresting officers, the argument fails. The Court held the officers' *Draper* verification unavailable to support the arrest because the warrant itself was not based on probable cause (though the officers did not know it). There the sheriff had satisfied neither prong of *Aguilar:* he didn't even identify his information as coming from an informant. Similarly, United

States v. Lee, 428 F.2d 917 (6th Cir. 1970) ; Saville v. O'Brien, 420 F.2d 347 (1st Cir.), cert. denied, 398 U.S. 938, 90 S.Ct. 1840, 26 L.Ed.2d 270 (1970) ; United States v. Melvin, 419 F.2d 136 (4th Cir. 1969), involved cases where the basic reliability of the informant had not been shown. In *Melvin*, furthermore, the *Draper* verification itself was defective and failed to provide any support for the prior information.

9. As indicated above, the tip furnished Agent Moody sufficient probable cause, at least upon his *Draper* verification, to make the arrest and search. Petitioner criticizes the Arizona Court of Appeals for what he deems mutually inconsistent holdings: "For *Aguilar* purposes, the informant is a reliable agent of the state, but for wiretapping . . . he is a private citizen . . . ." That view does not appear from the opinion. While one might conjecture that the most reliable informant would inevitably be on a contingent fee arrangement, whether he is in fact reliable is a separate question from whether an agency relationship has been established.

burden on the issue of illegal wiretapping sufficiently to require the state to produce the informant or otherwise go forward.

 There is no question that, if the conversation overheard was between Aikins and Jackson, the man Aikins went to meet, no consent was given to listen in. United States v. Smith, 442 F.2d 448 (9th Cir. 1971). One who is a private citizen may taint his otherwise admissible search by the participation of government officials, United States v. Payne, 429 F.2d 169 (9th Cir. 1970), or by becoming the agent of the state, Williamson v. United States, 311 F.2d 411 (5th Cir. 1962). No evidence, except the speculation of petitioner, indicated direct or, by furnishing equipment, access or the like, indirect assistance of the state in a putative wiretap. The evidence easily supports the opposite inference. Moody testified that while the informant was paid after Aikins arrest, no prior promise for payment was made, that he did not wish at first to receive the money, and that he had never before been paid for information. MS 46–48, 52, 121–24. The value of the testimony was for the trier of fact, and as it supports the holding that no agency relationship existed, it may not be attacked by habeas corpus. An informant will not be produced, nor the agency relationship presumed, on the speculation, logically derived or not, of petitioner.[10] United States v. Ruiz-Juarez, 456 F.2d 1015 (9th Cir. 1972). As the informant was not an agent, it is not necessary to decide whether petitioner met his burden on the existence of wiretapping.

*Evidence to Support Conviction*

 Petitioner's final contention is that there was no evidence to support a conviction of possession for sale. *See* Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960); Fagerberg v. Mummert, No. Civ–72–434–PHX–WPC (D.Ariz. Sept. 14, 1972). At trial he was in the unenviable position of arguing that his client was completely alien to narcotics, to defeat probable cause, and that no allowable inference demonstrated that he possessed the drugs for other than personal use, to defeat the sale counts. He challenges first the use by the judge of his reputation as a non-user to support the verdict. Tr. 406–407. No fifth amendment issue is involved, as defense counsel adequately established that reputation from the mouths of the police officers. It was a fair inference from the amounts of these drugs examined by the police chemist, Tr. 178–98, and the form in which they usually appear on the street, Tr. 41–48, that the 22 grams of cocaine and 118 grams of heroin were possessed for sale. Leary v. United States, 395 U.S. 6, 32–44, 89 S.Ct. 1532, 1546–1552, 23 L.Ed.2d 57 (1969), is not to the contrary. Petitioner argues that no evidence supports the contention that these were "large amounts." Aikins had enough drugs for 220 "baggies" of cocaine and 1180 "papers" of heroin, each package known to be minimum sale and/or use amounts. The convictions are supported by sufficient evidence. United States v. Ortiz, 445 F.2d 1100 (10th Cir.), cert. denied, 404 U.S. 993, 92 S.Ct. 541, 30 L.Ed.2d 545 (1971); *see* United States v. Walker, 146 U.S.App.D.C. 95, 449 F.2d 1171 (1971); Hinton v. United States, 137 U.S.App.D.C. 388, 424 F.2d 876 (1969).

It is ordered that the petition for a writ of habeas corpus is denied.

10. The entrapment cases cited by petitioner will not support production of the informant to rebut the testimony as to agency.