STATE of Iowa, Appellee,

v.

Rex A. BOYD, Appellant.

No. 56935.

Supreme Court of Iowa.

Dec. 18, 1974.

Heard by MOORE, C. J., and MASON, RAWLINGS, LeGRAND, REES, UHLEN-HOPP, REYNOLDSON, HARRIS, and McCORMICK, JJ.

LeGRAND, Justice.

A Polk County jury convicted defendant of the crime of possessing a controlled substance (marijuana) with intent to deliver in violation of § 204.401(1), The Code. He was sentenced to serve a term of not more than five years in the Men's Reformatory, a judgment from which he appeals. We affirm the trial court.

Three issues are presented for review. They are: (1) error in refusing to dismiss the charge for the State's failure to file a county attorney's information within 30 days from the time defendant was held to answer (§ 795.1, The Code); (2) error in restricting defendant's examination of witnesses on his motion to suppress evidence seized by virtue of a search warrant; and (3) error in submitting the issue of defendant's intent to deliver the marijuana in his possession because there was no evidence to sustain that allegation.

Briefly stated, the facts upon which defendant's conviction depends are these. Acting on an informant's tip, a Des Moines police officer obtained a warrant to search the premises where defendant lived for controlled substances allegedly in his possession contrary to Chapter 204, The Code.

Four police officers executed the warrant and the ensuing search revealed 15 bricks of marijuana wrapped in cellophane of varying colors; six cellophane or plastic bags containing marijuana; two sets of weighing scales; and three small plastic butter dishes containing marijuana seeds. The total weight of the marijuana was approximately 33 pounds.

Defendant was subsequently charged with possession of a controlled substance with intent to deliver, contrary to the provisions of § 204.401(1). As already mentioned, his trial on that charge resulted in

Patterson, Lorentzen, Duffield, Timmons, Irish & Becker, of Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Fred M. Haskins, Asst. Atty. Gen., and Ray Fenton, County Atty., for appellee.

his conviction and sentence. This appeal seeks to reverse that result.

I. Defendant first challenges the proceedings against him because the county attorney's information was not filed within 30 days from the time he was held to answer. He relies on § 795.1, The Code, the pertinent provision of which is as follows:

"When a person is held to answer for a public offense, if an indictment be not found against him within thirty days, the court must order the prosecution to be dismissed, unless good cause to the contrary be shown * * *"

■ We mention parenthetically the term indictment in the statute includes charges brought by county attorney's information. See State v. Nelson, Iowa, 222 N.W.2d 445, filed October 16, 1974.

Following his arrest, defendant was represented by counsel and was released from custody on bond. He made no request for a quick indictment under § 795.1. Until our decision in State v. Gorham, 206 N.W.2d 908 (Iowa 1973), this combination of circumstances would have constituted a waiver of the provisions of that statute.

We doubt if *Gorham* and *Nelson* apply here under the prospectivity rule announced in the former, but we pass that question, since it was not relied on in the trial court. We consider and decide the case as it was presented and decided there.

Assuming defendant is entitled to the benefit of the rule announced in *Gorham* as applied to § 795.1 in *Nelson,* the charge against him must be dismissed unless good cause for the delay in filing the information has been shown. The trial court found good cause and we agree.

In *Gorham* (206 N.W.2d at 914) we said the State had the burden of showing good cause for any delay beyond the statutory period and that "courts must engage in an ad hoc delicate balancing process in evaluating any 'good cause' so shown."

■ With this in mind, we relate briefly the circumstances under which the trial court in the present case found good cause for delay in complying with § 795.1, The Code.

On April 25, 1973, our opinion in State v. Gorham, supra, abrogated the demand-waiver rule as the *sole* test and made failure to demand a speedy trial or a speedy indictment only one circumstance to be considered in determining whether good cause existed for delay.

■ There is no doubt the change worked by *Gorham* imposed additional and unanticipated burdens upon prosecutors. While ordinarily the State may not plead the press of business to escape the clear requirement of § 795.1, we said in State v. Jennings, 195 N.W.2d 351, 356 (Iowa 1972), delay resulting from congestion of the trial docket attributable to exceptional circumstances may constitute good cause for a reasonable trial postponement. At the same time we cautioned that chronic crowded dockets, sickness of a trial judge, or unavailability of judges due to vacation schedules would not alone suffice. In that connection we said:

"The public policy inherent in § 795.2 [in this case § 795.1] requires trial within 60 days absent good cause, and it is the State's duty to effectuate that policy."

On this subject the ABA Standards Relating to Administration of Criminal Justice, Compilation, pages 276, 277 (1974), recognize that delay in bringing a case to trial resulting from "congestion of the trial docket when the congestion is attributable to exceptional circumstances" should be excluded from the period in computing time within which a case must be brought to trial.

Limiting ourselves to the peculiar facts of this case, we hold the trial court did not err in overruling defendant's motion for a dismissal of the charges against him. We do not face here the chronic court congestion condemned in *Jennings.* We are confronted rather with the type of "exceptional cir-

cumstances" recognized both in that case and in the ABA Standards.

For many years the State had relied on the demand-waiver rule. When *Gorham* changed this, it was neither practical nor wise to expect the new procedure to be effective overnight. We believe the "delicate balancing process" mentioned in *Gorham* justifies us in taking this into consideration. Fairness to the State dictates it be given a reasonable opportunity to adjust to the drastic modification in the processing of criminal cases.

Perhaps the most persuasive argument for the State is found in State v. Jackson, 173 N.W.2d 567, 569 (Iowa 1970), where we discussed the extent to which newly adopted rules should be applied:

"Important factors [in determining the application of a newly adopted rule to pending cases] include the purpose of the new rule; the extent to which the old standard had been relied upon; and the effect a particular kind of application will have on the administration of justice. Underlying all of these is the basic inquiry as to how seriously the discarded rule affected the 'very integrity of the fact-finding process' or produced 'the clear danger of convicting the innocent.' "

None of these factors will be subverted by the conclusion reached here. On the contrary, the result urged by defendant is manifestly unwarranted under this record. The county attorney testified to the difficulty, after the *Gorham* decision, of expeditiously disposing of the backlog developed before that case, while at the same time trying to process new matters within the statutory time allowed by §§ 795.1 and 795.-2. We believe this presented a very real— and a very unusual—problem.

Limiting our finding to the peculiar facts presented in this case and repeating the caution that the State must make serious and good faith efforts to comply with the time limitations in §§ 795.1 and 795.2, we hold there was no error in the trial court's finding of good cause for the delay here nor

in its refusal to dismiss the charges against defendant.

II. We consider next the claim of error concerning the sufficiency of evidence on the question of defendant's intent to deliver. Possession of controlled substances with intent to deliver is regarded as a more serious offense and draws a more severe penalty than possession for one's own use.

Defendant was charged under § 204.-401(1), The Code, 1973, which makes it a crime to "manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance, or to act with, enter into a common scheme or design with, or conspire with one or more other persons to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance."

▪▪▪ Where, as here, intent is an essential element of a crime, it may be proven by either direct or circumstantial evidence. State v. Ampey, 210 N.W.2d 433, 434 (Iowa 1973). We have also noted intent is ordinarily hard to prove except by circumstantial evidence. State v. Graham, supra, 221 N.W.2d at 260. When the evidence is circumstantial alone, it must be entirely consistent with defendant's guilt and inconsistent with any rational theory of innocence. State v. Reeves, 209 N.W.2d 18, 21 (Iowa 1973). In considering sufficiency of the evidence, we view it in the light most favorable to the State and accord the evidence all reasonable inferences to support the verdict. State v. Graham, supra, 221 N.W.2d at 259, 260; State v. Myers, 215 N.W.2d 262, 263 (Iowa 1974).

▪▪▪ We recite the evidence upon which the State relies. The search of defendant's abode disclosed about 33 pounds of marijuana. It was packaged in bricks weighing approximately two pounds each. There were also a number of small cellophane baggies containing marijuana. The officers also seized two sets of scales. There was also testimony by a narcotics officer that marijuana was usually packaged and as-

sembled in two pound bricks for sale purposes.

This is all the evidence on the question of intent. There is no evidence of any delivery or attempt at delivery. There is no evidence as to the amount reasonably necessary to satisfy the personal wants of a user. Unlike some states, our statute fixes no amount which creates an inference of possession with intent to deliver.

We have not met this precise issue until now. In State v. Lynch, 197 N.W.2d 186, 190 (Iowa 1972), we held evidence from a state narcotics agent as to the manner in which marijuana is measured and packaged was admissible on the issue of defendant's intent to sell the product. That case related only to the admissibility of such testimony, not its sufficiency alone to submit the issue of intent for jury consideration.

The problem before us has been considered by a number of state and federal courts with mixed results. Some hold intent may not be established by mere possession, regardless of the quantity. Commonwealth v. Ellis, 356 Mass. 574, 254 N.E.2d 408, 412 (1970); Perry v. Delaware, 303 A.2d 658, 659 (Dela.S.Ct.1973) (although other circumstances present were held sufficient); State v. Larko, 6 Conn.Cir. 564, 280 A.2d 153, 157 (1971); State v. O'Mealey, 95 Idaho 202, 506 P.2d 99, 100–103 (1973).

A contrary result has been reached in other cases under varying circumstances. In People v. Gordon, 10 Cal.App.3d 454, 89 Cal.Rptr. 214, 217 (1970), this appears:

"The sale purpose of the possession was established by evidence of the quantity of narcotics (76 kilos) and the manner of packaging (individually wrapped bricks) and the opinion of an expert * * * that the narcotic was packaged for sale."

A similar result was reached in People v. Grant, 1 Cal.App.3d 563, 81 Cal.Rptr. 812, 816, 817 (1969), where the court said:

"This large amount of pure heroin (16 ounces) itself affords a reasonable inference of possession for sale."

See also United States v. Johnson (5th Cir. 1972), 469 F.2d 973, 976, 977 (possession of 133 pounds of marijuana supports inference distribution was intended); United States v. Mather (5th Cir. 1972), 465 F.2d 1035, 1038 (possession of 197.75 grams of cocaine sufficient to show intent to deliver); Aikins v. Gomes (U.S.D.C.Ariz.1972), 367 F.Supp. 401, 406 (fair inference from the amount and form in which they usually appear on the street that the 22 grams of cocaine and 118 grams of heroin were possessed for sale); Williams v. Maryland, 14 Md.App. 619, 287 A.2d 803, 807 (1972) (possession of 131 capsules containing heroin and 40 glassine bags containing heroin gave rise to the justifiable inference of possession with intent to distribute under Maryland statute making possession of "sufficient quantity" evidence of intent to distribute.)

We have no statutory guidelines to suggest what quantity of the drug raises an inference of intent to deliver; nor do we believe it is a matter of sufficient general knowledge and acceptance that we may judicially notice it. Here, defendant had more than 33 pounds of the drug. We cannot say under this record whether this is a lot or a little for defendant's personal use.

However, there are other circumstances which, coupled with quantity, are sufficient. According to the testimony, the drug was wrapped and packaged in the manner usually associated with narcotics possessed for sale and delivery to others. Another telling fact is the presence of two scales located in close proximity to the marijuana by which it could be measured and weighed for packaging.

When all the evidence is considered, together with the reasonable inferences it permits, the jury was properly allowed to determine if the marijuana possessed by defendant was held for purpose of delivery.

III. The most troublesome question in this case concerns defendant's effort to suppress the evidence seized under a search warrant issued on the strength of an affida-

vit by Officer Addison Bowlsby on information supplied by an unnamed informant.

This matter was first raised unsuccessfully by motion to suppress prior to trial and later renewed when the evidence was introduced at trial. Although defendant appears to have shifted ground somewhat since then, we believe it may be fairly said the basic argument advanced on each occasion is that defendant was wrongfully denied the opportunity to inquire into the truth and veracity of the assertions upon which the search warrant issued.

Defendant says the search and seizure, together with the subsequent introduction of evidence obtained thereby, violated his rights under Article I, § 8, of the Iowa Constitution and the 4th Amendment to the United States Constitution. As a corollary to that constitutional right, he urges, too, that he was denied due process of law because he was refused the opportunity to examine the witness upon whose affidavit the warrant issued and the magistrate who issued it concerning the truth of the facts recited by the former and relied on by the latter.

In his written brief, defendant states his position this way:

"The narrow issue presented for review * * * is whether or not defense counsel on a hearing on a motion to suppress evidence acquired in an allegedly illegal search and seizure may be permitted to go beyond and behind what is contained on the face of the warrant, information [presented] and magistrate's endorsement in an attempt to determine whether or not probable cause existed for the issuance of the warrant."

It should be noted defendant does not attack the *sufficiency* of the evidence upon which the warrant issued, which is always subject to review. He wants to demonstrate the information relied on was untrue. This is a separate, and far different, question, one about which there is great uncertainty and divergence of opinion.

Both the federal and Iowa constitutions guarantee citizens they will be "secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." See Amendment 4, United States Constitution, and Article I, § 8, Iowa Constitution.

In this regard all courts agree this constitutional provision should receive "common sense and realistic" interpretation; that the use of search warrants should be encouraged; and that highly technical attacks on warrants which tend to discourage police officers from seeking a search warrant before acting should be discouraged. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684, 689 (1965); United States v. Bowling (6th Cir. 1965), 351 F.2d 236, 237; State v. Spier, supra, 173 N.W.2d at 858.

Few constitutional provisions have been the source of more litigation than this one; but despite the endless number of times search warrant controversies have been before this court, we are nevertheless confronted today with an issue not heretofore considered.

We have said the validity of a search warrant must be determined only on information brought to the attention of the magistrate. State v. Lynch, supra, 197 N.W.2d at 191; State v. Spier, supra, 173 N.W.2d at 858. This rule, however, clearly deals only with the question of the legal sufficiency of that evidence to constitute probable cause. It does not reach the present issue.

■ Furthermore it is well settled the magistrate must make his own independent determination of probable cause from the information presented to him. State v. Spier, supra, 173 N.W.2d at 857–858. But what if the averments are untrue? May the defendant challenge the search warrant

on that basis; and, if so, under what conditions?

We have been unable to discover any case in which we have considered that question, although we made parenthetical references to it in several cases. In State v. Spier, supra, 173 N.W.2d at 862, we noted the magistrate may rely on the truth of the facts and underlying circumstances related to him. In an earlier case, State v. Hall, 259 Iowa 147, 154–156, 143 N.W.2d 318, 322, 323 (1966), we appproved a quotation from Rugendorf v. United States, 376 U.S. 528, 532, 84 S.Ct. 825, 828, 11 L.Ed.2d 887, 891 (1964) to the effect factual inaccuracies of only "peripheral relevancy to the showing of probable cause" which do not "go to the integrity of the affidavit" will not invalidate a warrant.

Neither of these cases, however, reached the problem we face now. We look, therefore, to decisions from other courts which have considered and decided the issue. There is wide disparity among them, both state and federal, not only in the results but also in the reasons relied on. As frequently noted by circuit courts in stating conclusions at odds with other circuits, the United States Supreme Court has not yet settled the question. United States v. Marihart (8th Cir. 1974), 492 F.2d 897, 899; United States v. Morris (5th Cir. 1973), 477 F.2d 657, 662 (n. 3).

Law review writers have not neglected this subject either. Among the many articles, see The Outwardly Sufficient Search Warrant: What if It's False?, 19 U.C.L.A.L. Rev. 96 (1971); Testing the Factual Basis for a Search Warrant, 67 Columbia L.Rev. 1529; Inaccurate Search Warrant Affidavits as a Ground for Suppressing Evidence, 84 Harvard L.Rev. 825 (1971); Search Warrant Affidavits—The Constitutional Restraints, 23 Drake L.Rev. 623 (1974). See also 5 A.L.R.2d 394 (1949).

It is neither necessary nor desirable to review the myriad cases considering this subject except to illustrate the variety of options open to those courts which, like this one, are dealing with the problem as a case of first impression.

There is considerable authority that inquiry into the veracity of the facts presented to the magistrate should either never be permitted or should be allowed only upon a claim the magistrate acted arbitrarily and capriciously. State v. Sabari, 109 Ariz. 553, 514 P.2d 474, 477 (1973); Liberto v. State, 248 Ark. 350, 451 S.W.2d 464, 468 (1970); People v. Bak, 45 Ill.2d 140, 258 N.E.2d 341, 343 (1970), cert. denied, 400 U.S. 882, 91 S.Ct. 117, 27 L.Ed.2d 121 (1970); State v. Lamb, 209 Kan. 453, 497 P.2d 275, 287 (1972); Mattingly v. Com., 310 Ky. 561, 221 S.W.2d 82, 84 (1949); Tucker v. State, 244 Md. 488, 224 A.2d 111, 117–118 (1966), cert. denied 386 U.S. 1024, 87 S.Ct. 1381, 18 L.Ed.2d 463 (1967); State v. Brugioni, 320 Mo. 202, 7 S.W.2d 262, 263 (1928); State v. English, 71 Mont. 343, 229 P. 727, 729 (1924); State v. Petillo, 61 N.J. 165, 293 A.2d 649, 653–656 (1972); Baker v. State, 448 P.2d 282, 283 (Okl.Cr.1968); Owens v. State, 217 Tenn. 544, 399 S.W.2d 507, 511 (1965); Gracie v. United States, 15 F.2d 644, 646 (1st Cir. 1926); Evans v. United States, 242 F.2d 534, 536 (6th Cir. 1957); United States v. Brunett, 53 F.2d 219, 225 (W.D. Mo.1931).

A number of states reach opposite results because of controlling statutes. State v. Wright, 511 P.2d 1223, 1225–1226 (Or.1973); People v. Alfinito, 16 N.Y.2d 181, 264 N.Y. S.2d 243, 246, 211 N.E.2d 644, 646 (1965); State v. Bankhead, 30 Utah 2d 135, 514 P.2d 800, 802 (1973); Theodor v. Superior Court, 8 Cal.3d 77, 104 Cal.Rptr. 226, 235–239, 501 P.2d 234, 243–247 (1972).

Still others allow an investigation into the truth of the facts on certain conditions. Com. v. Hall, 451 Pa. 201, 302 A.2d 342, 344 (1973) (must show intentional misstatement of fact); State v. Melson, 284 So.2d 873, 875 (La.1973) (only for perjury); Davenport v. State, 515 P.2d 377, 380 (Alaska 1973) (material misstatement, whether intentional or not); State v. Lehman, 8 Wash.App. 408, 506 P.2d 1316, 1321 (1973) (false affidavit or

material inaccuracy); State v. Baca, 84 N.M. 513, 505 P.2d 856, 858 (1973) (perjury or other imposition on judicial officer); United States v. Rael, 467 F.2d 333, 336 (10th Cir. 1972), cert. denied 410 U.S. 956, 93 S.Ct. 1429, 35 L.Ed.2d 690 (1973) (falsehood or other imposition on magistrate); United States v. Bridges, 419 F.2d 963, 966 (n. 4) (8th Cir. 1969) (statement must be false and material); United States v. Harwood, 470 F.2d 322, 324–325 (10th Cir. 1972) (material false statement without specifying it need be intentional).

Still another group of cases rejects inquiry into the truth of the factual basis for a search warrant "as a matter of routine" but holds defendant should be permitted that recourse upon a preliminary showing of intentional falsehood or other fraud practiced on the magistrate. United States v. Rael, supra, 467 F.2d at 336; United States v. Suarez, 380 F.2d 713, 716 (2d Cir. 1967); United States v. Dunnings, 425 F.2d 836, 839–840 (2d Cir. 1969), cert. denied 397 U.S. 1002, 90 S.Ct. 1149, 25 L.Ed.2d 412 (1970); United States v. Thornton, 147 U.S.App. D.C. 114, 454 F.2d 957, 967–968 (1971); United States v. Halsey, 257 F.Supp. 1002, 1006 (D.C.N.Y.1966).

Perhaps the most definitive rule is that adopted by a number of federal circuit courts. See United States v. Carmichael, 489 F.2d 983, 988 (7th Cir. 1973); United States v. Thomas, 489 F.2d 664, 669 (5th Cir. 1973); United States v. Marihart, supra, 492 F.2d at 899. This rule, similar in some respects to the pronouncements in the *Dunnings* and *Thornton* cases, is as follows: Before a defendant is entitled to a hearing on the veracity of a legally sufficient affidavit, he must make a preliminary showing by alleging under oath (1) any misrepresentation by the government agent of a material fact or (2) any *intentional* misrepresentation by the government agent of a fact, material or not.

The strict rule in case of intentional misconduct by the government agent is justifed on the rationale the government should not profit by the perfidy of its own agents. United States v. Thomas, supra, 489 F.2d at 670; cf. United States v. Upshaw, 448 F.2d 1218, 1221 (5th Cir. 1971).

■ Under our law a search warrant may issue only on a showing of probable cause supported by oath or affirmation. The evidence upon which a finding of probable cause was made is always available for appraisal, whether by affidavit or by oral testimony before the magistrate. In the former the instrument itself tells its own story; in the latter, the magistrate must endorse, among other things, the substance of the testimony received. State v. Spier, supra, 173 N.W.2d at 862. Thus a defendant knows the facts recited against him. He should point out their imperfection if he asks to assail their veracity.

■ After a review of the various, and sometimes conflicting, conclusions of the other courts, we now adopt a rule permitting a defendant to inquire into the truth of the representations upon which a search warrant has been issued only upon a preliminary showing under oath that an agent or representative of the state has: (1) intentionally made false or untrue statements or otherwise practiced fraud upon the magistrate; or (2) that a material statement made by such agent or representative is false, whether intentional or not.

■ If defendant proves either of the above by a preponderance of the evidence, the search warrant shall be invalidated and the evidence seized thereunder shall be inadmissible.

■ Applying at last these principles to the present controversy, we find defendant is not entitled to the relief he asks. At no time did he make any statement as to the imperfections he relied on. Furthermore, it is clear from the record he sought to impeach the veracity of the informant rather than that of the police officer. Even if accomplished, that would not affect the warrant. See State v. Baca, supra, 505 P.2d at 858.

Defendant's position is not unlike that of the accused in United States v. Thornton, supra, 454 F.2d at 967, where the court said:

"At no time has appellant advanced any particular reason for quizzing the officer-affiant as to the reliability of the informant or the information he supplied other than a desire to assay those qualities. As counsel explained to the trial judge, '[t]he only way my defendant is connected with this [transaction] is through the word of this informant and I think we have a right to test the reliability of this informant * * *' We commend counsel's endeavor to afford his client a maximum of protection and, like counsel, we realize that reliability is the bridge to probable cause as to appellant. We think, however, that countervailing considerations deny an automatic right such as counsel insisted upon."

That language is applicable here, and we find no error in the trial court's ruling under the particular facts of this case.

 IV. We should probably make brief mention of one other issue raised. Defendant insists the magistrate had no jurisdiction to issue the warrant because he then held incompatible offices, police judge of Urbandale and acting police judge of Johnston.

In the view we take of this matter we need not decide whether the offices are incompatible nor the consequences if that is the case. We believe the record is fairly open to the conclusion the magistrate first occupied his office in Urbandale and later, just six days before the warrant was issued, he was appointed as acting police judge in Johnston. Relying on State v. Anderson, 155 Iowa 271, 272, 136 N.W. 128, 129 (1912), defendant argues the magistrate was without jurisdiction to act in this case. However, the *Anderson* case only holds the magistrate here would have vacated his office in Urbandale by accepting the appointment in Johnston. Assuming defendant's argument as to incompatibility is valid, it would gain him nothing. State ex rel. LeBuhn v. White, 257 Iowa 606, 609, 612, 133 N.W.2d 903, 904 (1965); State ex rel. Banker v. Bobst, 205 Iowa 608, 609, 218 N.W. 253, 254 (1928); cf. State v. Central States Electric Co., et al., 238 Iowa 801, 818, 28 N.W.2d 457, 466 (1947) (incompatibility does not necessarily invalidate acts).

V. Finding no reversible error in any of the issues raised, we affirm the judgment of the trial court.

Affirmed.