THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
HERBERT LAWS, JR., Defendant-Appellant.

First District (2nd Division)   No. 79-293

Opinion filed March 18, 1980.

DOWNING, J., dissenting.

Ralph Ruebner and Michael J. Pelletier, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Myra J. Brown, and William Gamboney, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Following a stipulated bench trial, defendant, Herbert Laws, Jr., was convicted of possession of a controlled substance. He was sentenced to a term of five years' probation with one year periodic imprisonment. Prior to trial, defendant submitted a motion to quash the search warrant and to suppress evidence. His motion asked the court to grant a hearing because he alleged that the warrant was issued upon false testimony contained in the affidavit. The court, basing its decision on *People v. Bak* (1970), 45 Ill. 2d 140, 258 N.E.2d 341, *cert. denied* (1970), 400 U.S. 882, 27 L. Ed. 2d 121, 91 S. Ct. 117, denied defendant's motion and, following trial and conviction on the possession charges, defendant appealed. On appeal, defendant contends that his case must be remanded to the trial court for a hearing on his pretrial motion in accord with the dictates of *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, which was decided subsequent to his trial.

On August 21, 1976, a search warrant was issued based upon an affidavit submitted by a Chicago police officer. The officer-complainant averred that a reliable informant, upon whose information he had acted in the past resulting in a number of arrests, told him of several purchases of

drugs from defendant. The informant, from his frequent use of drugs, identified the substances as heroin. After receiving this information, the officer established surveillance coverage at the address given by the informant. During the period of surveillance, the officer saw several known addicts going in and out of defendant's apartment. At a later meeting, the officer showed his informant a picture of defendant. The informant immediately identified the man in the photograph as his drug contact.

The officer presented the above described affidavit to a magistrate, who issued a search warrant. It was stipulated at trial that several tin foil packages containing a powder later determined to be heroin were found in defendant's possession when the search warrant was executed.

Defendant filed a motion for a hearing on his contentions relative to quashing the search warrant and suppressing the evidence. Accompanying the motion was defendant's affidavit in which he swore that the information contained in the complaint for search warrant was false. The court heard arguments on whether a hearing should be granted. The State presented existing Illinois case law (*People v. Bak*), which established that defendant could not challenge the veracity of the complaint. Defendant acknowledged that such was the state of the law but contended that recent Supreme Court decisions barring defendant's right to challenge fourth amendment violations on Federal habeas corpus, impliedly mandated that the State court entertain motions attacking the credibility of affiants. Based upon the precepts set out in the Illinois cases, the trial court denied defendant's motion.

Soon after the trial court rendered a decision in the instant case, the United States Supreme Court decided *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674. The decision in *Franks* overruled existing Illinois case law typified by the leading case of *People v. Bak* (1970), 45 Ill. 2d 140, 258 N.E.2d 341, *cert. denied* (1970), 400 U.S. 882, 27 L. Ed. 2d 121, 91 S. Ct. 117, which was relied on below to deny defendant a veracity challenge to the warrant affidavit. Both parties to this appeal agree that the retroactivity of the *Franks* decision is the remaining unsettled question since the issue concluded in that case is determinative of this appeal if applied to all cases. The issue here is whether the trial court should have conducted a hearing on defendant's claims that the officer-complainant made a material false statement in the complaint for search warrant. The holding in *Franks* squarely addressed this issue:

> "[W]e hold that, where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment

requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." (438 U.S. 154, 155-56, 57 L. Ed. 2d 667, 672, 98 S. Ct. 2674, 2676-77.)

Thus, the question is not the applicability of *Franks*, but whether it applies retroactively. A related issue, pertinent only if *Franks* is indeed to be applied retroactively, is whether the petitioner here has fully complied with the requirements set out in *Franks*. As noted in *Bowen v. United States* (1975), 422 U.S. 916, 920, 45 L. Ed. 2d 641, 646-47, 95 S. Ct. 2569, 2572-73, where both retroactivity and application of constitutional doctrine are raised, retroactivity should be decided first. Accordingly, we begin with that issue.

In the fourth amendment area, the Supreme Court has generally limited those decisions which expand the scope of protection from unreasonable searches and seizures to prospective application only. (See *United States v. Peltier* (1975), 422 U.S. 531, 45 L. Ed. 2d 374, 95 S. Ct. 2313.) Nevertheless, in certain cases, the new protection has been extended to those defendants whose cases were pending on direct judicial review at the time of the announced decision. (See *Linkletter v. Walker* (1965), 381 U.S. 618, 622 n.4, 14 L. Ed. 2d 601, 604 n.4, 85 S. Ct. 1731, 1734 n.4.) In non-fourth-amendment cases, the court has been less reluctant to provide retroactivity for its decisions. See, *e.g., Eskridge v. Washington State Board* (1958), 357 U.S. 214, 2 L. Ed. 2d 1269, 78 S. Ct. 1061 (applying the rule of *Griffin v. Illinois* (1956), 351 U.S. 12, 100 L. Ed. 891, 76 S. Ct. 585, requiring the State to furnish trial transcripts to indigents on appeal, to a 1935 conviction).

The competing policy considerations which pertain to a determination of retroactivity were set out in *Stovall v. Denno* (1967), 388 U.S. 293, 297, 18 L. Ed. 2d 1199, 1203, 87 S. Ct. 1967, 1970:

"(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards. '[T]he retroactivity or nonretroactivity of a rule is not automatically determined by the provision of the Constitution on which the dictate is based. Each constitutional rule of criminal procedure has its own distinct functions, its own background of precedent, and its own impact on the administration of justice, and the way in which these factors

combine must inevitably vary with the dictate involved.' [Citation.]"

As the foregoing reflects, it is not the provision of the constitution under which the case is decided, but the policies pertaining to the individual holding which are determinate. Thus in *Stovall,* a sixth amendment case, protections afforded under *United States v. Wade* (1966), 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926, and *Gilbert v. California* (1966), 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951 (exclusion of tainted evidence where accused was exhibited to witnesses before trial at post-indictment identification proceeding in absence of counsel), were denied retroactive effect. The court weighed the above factors and determined that not only would it penalize law enforcement agents who had acted in accord with the present state of the law, it also would amount to an overwhelming burden on the administration of justice. Neither would the purpose of deterrence be served by allowing retroactive application, while any possible enhancement of the reliability of the fact-finding process would be minimal in light of these countervailing interests and the right of persons accused to make a due process argument. Thus, the application of *Wade-Gilbert* exclusionary rules to those cases where the police had no reason to know that the accused should be afforded counsel would fail to serve the policies implicated in all three of the *Stovall* criteria.

Similarly, in *United States v. Peltier* (1975), 422 U.S. 531, 45 L. Ed. 2d 374, 95 S. Ct. 2313, the Supreme Court refused to allow retroactive application of its prior decision in *Almeida-Sanchez v. United States* (1973), 413 U.S. 266, 37 L. Ed. 2d 596, 93 S. Ct. 2535. In *Almeida-Sanchez,* the court ruled that roving inland patrols of Border Patrol agents could not stop and search vehicles without probable cause or a warrant where the border was 25 miles away. In *Peltier* the court reasoned that retroactivity would not serve the purposes of the exclusionary rule where the border patrols had acted in good-faith reliance on the then prevailing constitutional standard and in compliance with an existing Federal statute. 422 U.S. 531, 540-42, 45 L. Ed. 2d 374, 383-84, 95 S. Ct. 2313, 2319-20.

It is apparent therefore, that it is not the fourth amendment which mandates prospective application only; instead, it is the nature of the constitutional guarantee extended in the particular case which must be weighed in the light of the *Stovall* factors. A consideration of these criteria and the recent Supreme Court retroactivity decision in *Peltier* leads to the conclusion that the doctrine of *Franks* should be applied retroactively.

In *Franks,* the petitioner was taken into custody for assaulting a 15-year-old girl. While awaiting a bail hearing, prior to receiving *Miranda* warnings, he allegedly made statements to a juvenile officer which

implicated him in another assault. These statements were relayed to a detective and following an investigation, a sworn affidavit in support of a search warrant was submitted to a judicial officer, who issued the search warrant. As in the case at bar, defendant made a motion to suppress the evidence seized at his residence (including clothing similar to that described by the second victim) and to challenge the veracity of the warrant affidavit. Franks alleged that the persons named in the affidavit as supplying the information concerning his normal apparel "would testify that neither had been personally interviewed by the warrant affiants, and that, although they might have talked to another police officer, any information given by them to that officer was 'somewhat different' from what was recited in the affidavit." (438 U.S. 154, 158, 57 L. Ed. 2d 667, 673-74, 98 S. Ct. 2674, 2678.) Further, as in the instant case, Franks alleged that the misstatements were not inadvertent but intentional and in "bad faith." The trial court denied his motion, but the United States Supreme Court reversed, stating that the warrant clause, the bulwark of fourth amendment protection, is premised upon the affiant's good faith since it requires probable cause supported by oath or affirmation. The result of the *Franks* decision was to provide a defendant with a procedure to challenge the truthfulness of an affidavit supporting the warrant and thereby to ensure that the warrant was issued upon probable cause. If a defendant was ultimately successful in his challenge, then the evidence seized based upon the warrant would be suppressed to the same extent as if probable cause was lacking on the face of the affidavit. As the court in *Franks* reasoned:

> "Because it is the magistrate who must determine independently whether there is probable cause, *Johnson v. United States*, 333 U.S. 10, 13-14 (1948); *Jones v. United States*, 362 U.S. 257, 270-71 (1960), it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or recklessly false statement, were to stand beyond impeachment."
> 438 U.S. 154, 165, 57 L. Ed. 2d 667, 678, 98 S. Ct. 2674, 2681-82.

The court recognized that there were competing interests which militated against allowing veracity challenges, but chose to limit the scope of its decision rather than abrogate defendant's right to impeach affiant's veracity. It conceded that members of the court had reservations about any further extension of the exclusionary rule, but reminded that the court had not questioned "the continued application of the rule to suppress evidence from the State's case where a Fourth Amendment violation has been substantial and deliberate." (438 U.S. 154, 171, 57 L. Ed. 2d 667, 682, 98 S. Ct. 2674, 2684.) And, as the court also noted, "[t]he requirement that a warrant not issue 'but upon probable cause, supported by Oath or affirmation,' would be reduced to a nullity if a police officer was able to

use deliberately falsified allegations to demonstrate probable cause, and, having misled the magistrate, then was able to remain confident that the ploy was worthwhile." (438 U.S. 154, 168, 57 L. Ed. 2d 667, 680, 98 S. Ct. 2674, 2683.) Additionally, the court emphasized that the *ex parte* nature of the warrant proceeding does not lend itself to a vigorous adversary examination of the affidavit. (438 U.S. 154, 169, 57 L. Ed. 2d 667, 680-81, 98 S. Ct. 2674, 2683-84.) In those cases which fall within the parameters of *Franks*, the post-search hearing would allow the adversary examination missing from the earlier *ex parte* proceeding.

We have discussed the court's reasoning in some detail because it not only provides the basis for the decision in *Franks* but is highly pertinent to the retroactivity issue as well, since the concerns mandating the original decision similarly require its retroactive application. See *Ramsey v. State* (Tex. Crim. App. 1979), 579 S.W.2d 920.

The first criterion in *Stovall* is an examination of "the purpose to be served by the new standards." There is no question but that allowing a defendant to make a valid showing of false swearing in a warrant affidavit would serve purposes of both deterrence and judicial integrity. (Compare *United States v. Peltier* (1975), 422 U.S. 534, 536, 45 L. Ed. 2d 374, 380-81, 95 S. Ct. 2313, 2317.) The affiant, by intentional misrepresentations, would be usurping the judgment of the magistrate and avoiding the constitutional mandate of demonstrable probable cause. Similarly, it is apparent that revelations of perjury in the pretrial state on the part of an officer intimately involved in the investigation could result in the discrediting or impeaching of his testimony at trial. Thus, purposes relative to the truth-finding process are affected by *Franks* proceedings.

As noted earlier, one of the primary reasons for not granting retroactivity has been the second *Stovall* standard—"the extent of the reliance by law enforcement authorities on the old standards." In *Stovall* and Peltier it was emphasized that to apply the particular decision retroactively would be to penalize law enforcement agents for their good-faith reliance on previously existing constitutional standards. (See also *Bowen v. United States* (1975), 422 U.S. 916, 919, 45 L. Ed. 2d 641, 646, 95 S. Ct. 2569, 2572.) The good-faith conduct of the police similarly weighed in Peltier's consideration of the first *Stovall* standard of "purpose":

> "When it came time to consider whether those decisions would be applied retroactively, however, the Court recognized that the introduction of evidence which had been seized by law enforcement officials in good-faith compliance with then-prevailing constitutional norms did not make the courts accomplices in the willful disobedience of a Constitution they are sworn to uphold.' *Elkins v. United States, supra*, 364 U.S. at 223."

(*United States v. Peltier* (1975), 422 U.S. 534, 536, 45 L. Ed. 2d 374, 380, 95 S. Ct. 2313, 2317.)

Good faith is equally pertinent to an evaluation of the deterrence aspect:

"The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused. Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force." (*Michigan v. Tucker* (1974), 417 U.S. 433, 447, 41 L. Ed. 2d 182, 194, 94 S. Ct. 2357, 2365, quoted in *United States v. Peltier* (1975), 422 U.S. 534, 539, 45 L. Ed. 2d 374, 382, 422 U.S. 2313, 2318.)

Thus, the element which distinguishes this case from those in which retroactivity has been denied is the officer's alleged bad-faith conduct, manifestly outside that condoned by the fourth amendment. This situation was aptly described in *Peltier*:

"If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." (422 U.S. 534, 542, 45 L. Ed. 2d 374, 384, 95 S. Ct. 2313, 2320.)

By its very terms, the *Franks* decision applies only where there has been a substantial preliminary showing of deliberate falsity or reckless disregard for the truth. Consequently, there can be no claim in a *Franks* situation that there has been good-faith reliance, not where perjury and wilful misrepresentations to a magistrate are at issue.

The State contends that the *Bak* decision barring veracity challenges in Illinois prior to *Franks* provided law enforcement officials with a "constitutional norm," condoning their conduct and inviting their reliance. This argument lacks merit. It is absurd to construe the *Bak* decision as an invitation to law enforcement agents to perjure themselves. It is equally illogical to interpret it as authorizing or condoning such conduct. Additionally, it strains credibility to include the illegal act of perjury within any definition of good faith. There can be little doubt that an officer who lies in an affidavit knows that he is acting in bad faith and in a way rejected by the constitution and the courts. Accordingly, the first two *Stovall* criteria are not impinged by a finding of retroactivity. Accord, *Ramsey v. State* (Tex. Crim. App. 1979), 579 S.W.2d 920, 922. Compare

*State v. Howery* (1979), 80 N.J. 563, 404 A.2d 632 (bad-faith reliance on existing law enough to bar retroactivity).

The third matter, "the effect on the administration of justice of a retroactive application of the new standards," is of more import here. The *Franks* decision, however, rejected the arguments regarding the massive burden on judicial resources by stating:

"Nor, if a sensible threshold showing is required and sensible substantive requirements for suppression are maintained, need there be any new large-scale commitment of judicial resources; many claims will wash out at an early stage, and the more substantial ones in any event would require judicial resources for vindication if the suggested alternative sanctions were truly to be effective. The requirement of a substantial preliminary showing should suffice to prevent the misuse of a veracity hearing for purposes of discovery or obstruction." (438 U.S. 154, 170, 57 L. Ed. 2d 667, 681, 98 S. Ct. 2674, 2684.)

The reasoning holds true whether *Franks* is applied retroactively or prospectively. The court went on to delineate strict compliance standards for the threshold substantial preliminary showing required to gain a hearing:

"There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant." (438 U.S. 154, 171, 57 L. Ed. 2d 667, 682, 98 S. Ct. 2674, 2685.)

Following such a showing, a heavy burden of proof would still remain on defendant prior to his prevailing at the hearing. We realize that *Franks* retroactivity may precipitate post-conviction petitions and post-search claims; however, the requirements for compliance are stringent enough to foreclose frivolous or unsupported allegations. (See *People v. Anderson* (1979), 74 Ill. App. 3d 363, 392 N.E.2d 938.) Therefore, *Franks*, in accord

with the reasoning in the recent Supreme Court decisions pertaining to retroactivity, must be extended to the case at bar.

The remaining issue is whether defendant has complied with the *Franks* criteria and should be afforded a hearing. Under *Franks*, a substantial preliminary showing consists of intentional or reckless false statements made by the affiant, which if excised would preclude a finding of probable cause in the affidavit. (See generally *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509; *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584.) Defendant's motion contains allegations of intentional falsity supported by categorical denials of statements made by the affiant. (Compare *State v. Jacques* (1978), 225 Kan. 38, 587 P.2d 861 (conclusory allegation that affiant lied because he did not reveal name of the informant).) Moreover, as required in *Franks*, defendant's averments, if proven, would arguably vitiate the contents of the warrant affidavit. Since the trial court denied defendant's motion based not on its substance but on the face of the affidavit rule in existence at that time, the sufficiency of defendant's allegations was not examined. In consequence, we remand to the trial court to allow defendant the opportunity to have his motion entertained in the light of *Franks*. *Cf. People v. Hall* (1979), 66 Ill. App. 3d 891, 384 N.E.2d 578; see also *People v. Anderson* (1979), 74 Ill. App. 3d 363, 392 N.E.2d 938.

Reversed and remanded with directions.

HARTMAN, J., concurs.

Mr. JUSTICE DOWNING, dissenting:
I do not think the defendant made the substantial preliminary showing of deliberate falsity or reckless disregard for the truth required by *Franks v. Delaware* (1978), 438 U.S. 154, 155-56, 57 L. Ed. 2d 667, 672, 98 S. Ct. 2674, 2677. Even if there was such a showing, I do not think *Franks* should be given retroactive application. Therefore, I would affirm.

I.

At the outset it is important to remember the state of the law in Illinois on August 21, 1976, when Officer Rosiak appeared before a judge of the circuit court of Cook County.

*People v. Bak* (1970), 45 Ill. 2d 140, 258 N.E.2d 341, was then the law of this State. In *Bak*, the issue was whether a defendant had a constitutional right to look behind a search warrant, valid on its face, and present evidence challenging the truthfulness of the allegations of fact on

which the warrant was issued. In arriving at the *Bak* decision, our supreme court reviewed the problem of permitting a challenge to the matters on which probable cause was found. A majority of our supreme court noted that both the Federal and State constitutions contemplated only that a judicial officer find probable cause for the issuance of a warrant based on the evidence under oath that has been presented by one requesting the warrant. The credibility of the affiant was for the judicial officer. The supreme court further noted that "[s]hould an affiant betray the confidence in his integrity which is contemplated by the *ex parte* proceeding and intentionally make misrepresentations to the judicial officer he can be punished for the offense." 45 Ill. 2d 140, 144.

The *Bak* decision was based in part on *McCray v. Illinois* (1967), 386 U.S. 300, 18 L. Ed. 2d 62, 87 S. Ct. 1056, wherein the Supreme Court pointed out that where the issue of probable cause is considered upon an application for a warrant, the magistrate is trusted to evaluate the credibility of the affiant in an *ex parte* proceeding. If the credibility of the affiant is doubted, he may require the informant be identified or even produced.

As noted, *Bak* was the law in this State at the time Rosiak swore to the two-page detailed complaint for a search warrant. In looking back I suggest we must assume the judicial officer, before whom the complaint was sworn to, fulfilled his judicial duty and was satisfied with the standards of credibility mandated by *Bak*. To assume less than that would, I suggest, undermine every *ex parte* judicial act, a conclusion to which I cannot subscribe.

The following is a summary of the points alleged in the complaint for search warrant sworn to by Officer Rosiak:

(1) A conversation with a reliable informant was held on August 19, 1976. Details regarding the officer's acquaintanceship with the informant were set forth.

(2) The informant advised the affiant that on August 19, 1976, at 4 p.m., for $100 he purchased narcotics in a piece of tin foil, at a second floor apartment located at 5617 S. Calumet Ave., Chicago, Illinois, from a Herbie, Jr.; that the informant had talked by telephone at 324-3214 with Herbie, Jr., prior to going to the apartment.

(3) The informant claimed to have been purchasing heroin from Herbie, Jr., at the second floor apartment at 5617 S. Calumet Ave., Chicago, Illinois, for approximately three months on the basis of 2-3 times weekly.

(4) That on several of the aforesaid occasions (referred to in (3) above) the heroin was given to him by a female Negro known to him as Mary, believed to be Herbie, Jr.'s, wife.

(5) The affiant, after speaking to the informant (August 19, 1976),

conducted a surveillance of the said building, and during a period of one hour, three known addicts were observed going into and leaving the building within five minutes.

(6) The affiant had another conversation with the informant on August 21, 1976, at approximately 7:30 p.m., who stated he had purchased heroin in a tin foil packet for $30 at approximately 5:45 p.m. from Herbie, Jr., at the same specified place after a telephone call to Herbie, Jr., at 324-3214.

(7) The affiant, after speaking to the informant on August 21, 1976, conducted a surveillance of the said building for about 1 hour and 15 minutes, during which time two known addicts were observed entering the building and leaving minutes later.

Based on the sworn complaint, the judicial officer issued a warrant. Shortly after the search warrant was issued, Officer Rosiak entered and searched the premises. Approximately 1.42 grams of heroin concealed in four tin foil packets were discovered.

After defendant was indicted and prior to trial, he filed a motion to quash the search warrant, suppress evidence, and for a hearing. Accompanying the motion was defendant's signed, unsworn statement. The majority characterizes this as an affidavit.[1] That point becomes significant because *Franks*, as I read it, states, as set forth in the majority opinion at page 11, "[a]ffidavits or sworn or otherwise reliable statements of witnesses should be furnished or their absence satisfactorily explained." 438 U.S. 154, 171, 57 L. Ed. 2d 667, 682, 98 S. Ct. 2674, 2685.

Defendant's statement asserts at least the following:

(1) Upon information and belief no informant exists, the conversations between the informant and officer, the officer's surveillance, and informant's conclusions are fabrications of Rosiak and figments of his imagination.

(2) On August 19 or 21, 1976, no person made purchases or transfers at the said location and no known narcotics addict presented himself.

(3) The warrant was issued upon false testimony.

Based on the *Bak* case no hearing was allowed on defendant's motion. The trial court denied defendant's motion to suppress.

In addition to the quote from *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, set forth on pages 3, 11, and 12 in the majority opinion, the Supreme Court also said:

"Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to

---

[1] An affidavit is a written declaration or statement of facts confirmed by the oath or affirmation of the party making it, taken before an officer having authority to administer such oath. *Cox v. Stern* (1897), 170 Ill. 442, 48 N.E. 906.

support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at the hearing is, of course, another issue." 438 U.S. 154, 171-72, 57 L. Ed. 2d 667, 682, 98 S. Ct. 2674, 2685.

Based on the standards set forth in *Franks*, as I read it, I do not think the defendant made a substantial preliminary showing that Officer Rosiak's affidavit contained a knowing and intentional false statement or that it was made with a reckless disregard for the truth.

As stated in *Franks*, "\* \* \* the rule announced today has a limited scope, both in regard to when exclusion of the seized evidence is mandated, and when a hearing on allegations of misstatements must be accorded." (438 U.S. 154, 167, 57 L. Ed. 2d 667, 679, 98 S. Ct. 2674, 2683.) Does the defendant's unsworn statement justify a hearing referred to in *Franks*? To me the answer is "no." Why? An analysis of Officer Rosiak's affidavit sets forth at least seven separate allegations presented to the court. We must assume that there was, whether individually or collectively, a truthful showing. As stated in *Franks*:

> "This does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." 438 U.S. 154, 165, 57 L. Ed. 2d 667, 678, 98 S. Ct. 2674, 2681.

Rosiak's allegations certainly set forth particular facts and circumstances underlying the existence of probable cause.

The defendant's unsworn statement, given its best light, refutes in clearly conclusory language Rosiak's allegations 1, 5, and 7 as summarized above. Paragraphs 2 and 6 are denied. No denials are made as to the allegations in paragraphs 3 and 4. The denials are the statements of defendant. No independent or supporting statements are submitted. No affidavits or sworn or otherwise reliable statements of witnesses were furnished or their absence satisfactorily explained. See *Franks*, 438 U.S. 154, 171, 57 L. Ed. 2d 667, 682, 98 S. Ct. 2674, 2685.

But even assuming the allegations of paragraphs 2 and 6 were set aside based on the unsworn statement, the allegations of undenied paragraphs 3 and 4 are sufficient to support a finding of probable cause. Add to that the conclusory denials of paragraphs 1, 5, and 7. As stated by *Franks*, 438 U.S. 154, 171-72, 57 L. Ed. 2d 667, 682, 98 S. Ct. 2674, 2685, "if

* * * there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required."

In my opinion, when considering the presumptive validity with respect to the affidavit (*Franks*, 438 U.S. 154, 171, 57 L. Ed. 2d 667, 682, 98 S. Ct. 2674, 2685), I do not think this defendant made a substantial preliminary showing. Therefore I would not reverse. See *People v. Anderson* (1979), 74 Ill. App. 3d 363, 369-70, 392 N.E.2d 938, *appeal denied* (1979), 79 Ill. 2d 621.

As I understand the effect of the majority opinion, this cause is being reversed and remanded "to the trial court to allow the defendant the opportunity to have his motion entertained in the light of *Franks*." What about the unsworn statement signed by defendant? Is the trial court to afford the defendant the opportunity to swear to the statement? If the trial court considers the statement does not comply with the mandate of *Franks*, can an amendment be allowed? These are but a few of the questions which surface. To ask the questions demonstrates the lack of a "substantial preliminary showing" required by *Franks*.

## II.

The retroactive question would not have to be answered at this time if the court concluded there was no substantial preliminary showing. Accepting the "competing policy considerations which pertain to a determination of retroactivity" as set out on page 4 in the majority opinion, I disagree with their conclusion on the extent of the reliance by law enforcement authorities on the old standards, and the effect on the administration of justice of a retroactive application of the new standards. *Stovall v. Denno* (1967), 388 U.S. 293, 297, 18 L. Ed. 2d 1199, 1203, 87 S. Ct. 1967, 1970.

This case is not an identification case as was *Stovall*. *Stovall* said: "The extent to which a condemned practice infects the integrity of the truth-determining process at trial is a 'question of probabilities.' 384 U.S., at 729. Such probabilities must in turn be weighed against the prior justified reliance upon the old standard and the impact of retroactivity upon the administration of justice." 388 U.S. 293, 298, 18 L. Ed. 2d 1199, 1204, 87 S. Ct. 1967, 1970.

Under *Bak* the judicial officer, before whom the affiant appeared, had to satisfy himself as to probable cause. *Franks* said this should be done in an adversary situation. That is an improvement of the truth-determining process, not the establishment of a new standard as set forth in the identification cases (*United States v. Wade* (1967), 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926, and *Gilbert v. California* (1967), 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951), decided with *Stovall*.

*Franks* discards a doctrine in effect in this State since 1970. I cannot say that the judge who issued the warrant did not fulfill his duty in satisfying himself as to Officer Rosiak's allegations. The two-page affidavit and the procedure used we must assume was a good faith compliance with the then prevailing constitutional norm. (See *United States v. Peltier* (1975), 422 U.S. 531, 536, 45 L. Ed. 2d 374, 380-81, 95 S. Ct. 2313, 2317.) In my opinion, *Franks* provides a sufficient deterrent for cases since June 26, 1978.

The effect on the administration of justice of a retroactive application of *Franks* would, I submit, have a chaotic effect on the administration of justice. By opening the door, upon characterizing this to be retroactive, we would be flooded with all these types of cases which have been finalized since *Bak* in March 1970. The majority recognizes that retroactivity may precipitate post-conviction petitions[2] and post-search claims. I suggest that under the record in this case such a result is not required. For these reasons I would affirm the conviction.