(No. 53399.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. HERBERT LAWS, JR., Appellee.

*Opinion filed April 17, 1981.*

494

SIMON, J., dissenting.

Tyrone Fahner and William J. Scott, Attorneys General, of Springfield, and Richard M. Daley and Bernard Carey, State's Attorneys, of Chicago (Melbourne A. Noel, Jr., Mark L. Rotert, and Donald B. Mackay, Assistant Attorneys General, of Chicago, and Marcia B. Orr and Joel A. Stein, Assistant State's Attorneys, of counsel), for the People.

Ralph Ruebner, Deputy Defender, and Michael J. Pelletier, Assistant Appellate Defender, of the Office of State Appellate Defender, of Chicago, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

Following a denial of a motion to quash a search warrant and to suppress evidence, defendant, Herbert Laws, Jr., and the prosecution entered into a stipulation of facts from which the circuit court of Cook County, in a bench trial, found the defendant guilty of possession of a controlled substance. The defendant filed a notice of appeal. Several months after the defendant appealed his conviction, the United States Supreme Court rendered its decision in *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674. *Franks* holds that, under certain circumstances, a defendant may challenge the veracity of sworn statements made in support of a search warrant. The defendant contended in the appellate court that the holding in *Franks* is applicable to his case and requires a reversal. The appellate court, with one justice dissenting, finding that *Franks* had retroactive application, reversed the conviction and remanded the cause to the circuit court of Cook County for a hearing as to the veracity of the sworn complaint for a search warrant. (82 Ill. App. 3d 417.) We granted the State leave to appeal under our Rule 315. 73 Ill. 2d R. 315.

On August 21, 1976, Officer Glenn Rosiak applied to a judge of the circuit court of Cook County for a warrant to search Herbert Laws, Jr., a female named Mary, and the second-floor apartment at 5617 South Calumet Avenue in Chicago. The officer's sworn complaint stated in substance the following: The officer had several conversations with a known informant of proved reliability. During these conversations, the informant told the officer that he had been purchasing heroin from "Herbie Jr." two or three times weekly for approximately three months. The officer stated that after showing a photograph of Herbert Laws, Jr., to the informant, the informant identified the person in the photograph as Herbie Jr. The officer stated that he

next established a surveillance of 5617 Calumet Avenue. During that time, which lasted just over an hour, he observed several known addicts enter and, shortly thereafter, leave the building. The judge found that probable cause existed to issue the search warrant.

A search was conducted pursuant to the warrant, producing heroin, cocaine, cannabis, and several firearms. The defendant was charged with possession of a controlled substance. (Ill. Rev. Stat. 1975, ch. 56½, par. 1402.) Prior to trial, the defendant filed a written motion to quash the search warrant and suppress the evidence. He requested a hearing, alleging that the search warrant was issued upon false statements contained in the sworn complaint. The defendant alleged that the conversations related by the officer never transpired and that the surveillance, as well as the existence of the informant, were merely fabrications of the officer.

The motion was denied on December 15, 1977. Based on *People v. Bak* (1970), 45 Ill. 2d 140, the judge concluded that a defendant could not go beyond the four corners of the warrant in questioning its veracity. Thus, no hearing on the motion was held.

As noted above, the search warrant in our case was issued August 21, 1976. In June of 1978 the United States Supreme Court announced its decision in *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674. Under *Franks,* a defendant may have a hearing to challenge the veracity of a warrant if certain requirements are met:

> "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied

by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." (*Franks v. Delaware* (1978), 438 U.S. 154, 171-72, 57 L. Ed. 2d 667, 682, 98 S. Ct. 2674, 2684.)

The appellate court, finding that *Franks* should be given retroactive application, reversed the defendant's conviction and remanded this cause to the trial court for a hearing on the earlier motion.

Two issues are argued before this court. The first, is whether the *Franks* decision should be given retroactive application so that the defendant's case would qualify for a hearing on the veracity of the officer's sworn statements. The second, is whether the allegations of the defendant are sufficient to satisfy the requirements of *Franks,* if it is found to be retroactive.

It has been well established in this State that a defendant may not impeach the veracity of the sworn statements upon which a search warrant was issued. (*People v. Bak* (1970), 45 Ill. 2d 140; *People v. Mitchell* (1970), 45 Ill. 2d 148; *People v. Berry* (1970), 46 Ill. 2d 175; *People v.*

*Price* (1970), 46 Ill. 2d 209; *People v. Nakon* (1970), 46 Ill. 2d 561; *People v. Stansberry* (1971), 47 Ill. 2d 541.) As noted above, the Supreme Court in *Franks,* although not announcing a broad rule concerning the right to challenge the truthfulness of such sworn statements, did hold that an absolute ban upon post-search impeachment of veracity is not justified. The court in *Franks* also noted the substantial division of authority which, at that time, existed on the question. The Supreme Court did not address the subject of the retroactivity of its holding in *Franks,* which was decided June 26, 1978. Inasmuch as the search warrant in our case was issued August 21, 1976, and the defendant's motion to suppress was denied on December 15, 1977, *Franks* is relevant only if its holding has retroactive application.

At common law there was no authority to support the proposition that judicial decisions were to be applied prospectively only. Under what has come to be known as Blackstonian reasoning, the courts did not pronounce or make new law, but rather declared or discovered existing law. (See 3 W. LaFave, Search & Seizure sec. 11.5, at 681 (1978); Schaefer, *The Control of Sunbursts: Techniques of Prospective Overruling,* 42 N.Y.U. L. Rev. 631 (1967).) However, in *Great Northern R.R. Co. v. Sunburst Oil & Refining Co.* (1932), 287 U.S. 358, 77 L. Ed. 360, 53 S. Ct. 145, it was held that a State court, in defining the limits of adherence to precedent, may make a choice for itself between prospective and retroactive application of its decision. There is no constitutional mandate requiring or prohibiting retroactive application of judicial pronouncements of new constitutional rules. *Linkletter v. Walker* (1965), 381 U.S. 618, 14 L. Ed. 2d 601, 85 S. Ct. 1731; *Johnson v. New Jersey* (1966), 384 U.S. 719, 16 L. Ed. 2d 882, 86 S. Ct. 1772; *Desist v. United States* (1969), 394 U.S. 244, 22 L. Ed. 2d 248, 89 S. Ct. 1030.

The choice between retroactive and nonretroactive

application does not depend upon the value of the constitutional guarantee involved and is not automatically determined by the provisions of the constitution under consideration. (*Johnson v. New Jersey* (1966), 384 U.S. 719, 728-29, 16 L. Ed. 2d 882, 889-90, 86 S. Ct. 1772, 1778-79.) In *Linkletter v. Walker* the court stated:

> "[W]e must then weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation. We believe that this approach is particularly correct with reference to the Fourth Amendment's prohibitions as to unreasonable searches and seizures." (*Linkletter v. Walker* (1965), 381 U.S. 618, 629, 14 L. Ed. 2d 601, 608, 85 S. Ct. 1731, 1738.)

While the question of retroactive application of a new constitutional rule will be resolved on the merits of each holding, certain factors have been the focal point of consideration. (See generally Annot., 22 L. Ed. 2d 821 (1970).) In *Stovall v. Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967, the court stated:

> "The criteria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." (*Stovall v. Denno* (1967), 388 U.S. 293, 297, 18 L. Ed. 2d 1199, 1203, 87 S. Ct. 1967, 1970.)

Although the extent of reliance on the former holdings and the effect of retroactive application on the administration of justice are acknowledged as worthy of consideration, foremost among the factors to be considered is the purpose to be served by the new standards. (*Desist v. United States* (1969), 394 U.S. 244, 249, 22 L. Ed. 2d

248, 255, 89 S. Ct. 1030, 1033-34.) In *Desist* the court noted the extent to which the other two factors will be considered by stating:

"It is to be noted also that we have relied heavily on the factors of the extent of reliance and consequent burden on the administration of justice only when the purpose of the rule in question did not clearly favor either retroactivity or prospectivity." *Desist v. United States* (1969), 394 U.S. 244, 251, 22 L. Ed. 2d 248, 256, 89 S. Ct. 1030, 1035.

In *Desist* the court considered whether the purpose of excluding evidence because of fourth amendment violations required retroactive application of the holding in *Katz v. United States* (1967), 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507. The court, in holding that *Katz* would not be applied retroactively, noted that all of the cases requiring the exclusion of illegal evidence have been based on the necessity for an effective deterrent to illegal police action. The court observed that the cases have held that the purpose would not be advanced by applying the rule retroactively. The misconduct of the police in the other cases had already occurred and would not be corrected by applying the new rule to those cases. The court also noted that, in contrast with decisions that have been accorded retroactive effect, there is no likelihood of unreliability or coercion in a search-and-seizure case; that the exclusionary rule is but a procedural weapon that has no bearing on guilt; and that the fairness of the trial is not in such cases under attack. (*Desist v. United States* (1969), 394 U.S. 244, 249, 22 L. Ed. 2d 248, 255, 89 S. Ct. 1030, 1033-34.) It has been stated that the reliance and effect-on-administration-of-justice factors are at least relatively minor considerations and that nonretroactivity in the fourth amendment area must primarily be justified, if at all, under the purpose factor. Since the purpose of the exclusionary rule as stated in *Elkins v. United States*

(1960), 364 U.S. 206, 4 L. Ed. 2d 1669, 80 S. Ct. 1437, is calculated to prevent, not to repair, "then the rule of nonretroactivity in Fourth Amendment cases makes a good deal of sense." (3 W. LaFave, Search & Seizure sec. 11.5, at 687 (1978).) Professor LaFave states that the holdings of the Supreme Court in *Linkletter, Desist,* and *Williams v. United States* (1971), 401 U.S. 646, 28 L. Ed. 2d 388, 91 S. Ct. 1148, will result in any new fourth amendment doctrines favorable to defendant being applied in prospective fashion. 3 W. LaFave, Search & Seizure sec. 11.5, at 685 (1978).

The application of the exclusionary rule for fourth amendment violations must be contrasted with the application of new constitutional holdings whose purpose is to safeguard and insure the integrity of the truth-finding function of a trial:

> "Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect. Neither good-faith reliance by state or federal authorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances.
>
> It is quite different where the purpose of the new constitutional standard proscribing the use of certain evidence or a particular mode of trial is not to minimize or avoid arbitrary or unreliable results but to serve other ends. In these situations the new doctrine raises no question about the guilt of defendants convicted in prior trials." (*Williams v. United States* (1971), 401 U.S. 646, 653, 28 L. Ed. 2d 388, 395, 91 S. Ct. 1148, 1152-53.)

See also *Johnson v. New Jersey*; *United States v. United States Coin & Currency* (1971), 401 U.S. 715, 730, 28 L. Ed. 2d 434, 444, 91 S. Ct. 1041, 1049 (White, J., dissenting); *Stovall v. Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967.

Defendant relies heavily on *United States v. Peltier* (1975), 422 U.S. 531, 45 L. Ed. 2d 374, 95 S. Ct. 2313, wherein the court, in considering the retroactive application of the exclusionary rule, discussed not only the purpose of the rule but also the question of whether there was good-faith reliance on the part of law-enforcement officers with the then-prevailing constitutional holdings that were later overturned by the court. The defendant contends that the officer's conduct in intentionally swearing to false statements made in support of a search warrant cannot be considered good-faith reliance. Thus, the defendant contends the "imperative of judicial integrity" requires that the holding of *Franks* be applied to his case.

Although *Peltier* discussed the "imperative of judicial integrity," it did not depart from the holdings of earlier cases discussed above. In *Peltier* the court noted that while the "imperative of judicial integrity" played a role in the court's decision in *Mapp v. Ohio* (1961), 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, which overruled *Wolf v. Colorado* (1949), 338 U.S. 25, 93 L. Ed. 1782, 69 S. Ct. 1359, the *Mapp* decision was denied retroactive application in *Linkletter.* (422 U.S. 531, 536, 45 L. Ed. 2d 374, 380-81, 95 S. Ct. 2313, 3317.) The court in *Peltier* also noted that in *Lee v. Florida* (1968), 392 U.S. 378, 20 L. Ed. 2d 1166, 88 S. Ct. 2096, which overruled *Schwartz v. Texas* (1952), 344 U.S. 199, 97 L. Ed. 231, 73 S. Ct. 232, the court, buttressing its holding by the "imperative of judicial integrity" principle, stated that under our constitution no court may serve as an accomplice in the wrongful transgression of the law. (422 U.S. 531, 536-37, 45 L. Ed. 2d 374, 381, 95 S. Ct. 2313,

2317.) *Peltier* pointed out, however, that when it came time to consider the retroactivity of *Lee,* the court held that it did not apply retroactively. (422 U.S. 531, 536-37, 45 L. Ed. 2d 374, 381, 95 S. Ct. 2313, 2317. See *Fuller v. Alaska* (1968), 393 U.S. 80, 21 L. Ed. 2d 212, 89 S. Ct. 61.) *Peltier* summarized the holdings of these cases thus:

> "The teaching of these retroactivity cases is that if the law enforcement officers reasonably believed in good faith that evidence they had seized was admissible at trial, the "imperative of judicial integrity" is not offended by the introduction into evidence of that material even if decisions subsequent to the search or seizure have broadened the exclusionary rule to encompass evidence seized in that manner." *(Peltier v. United States* (1975), 422 U.S. 531, 537, 45 L. Ed. 2d 374, 381, 95 S. Ct. 2313, 2317.)

The court in *Peltier* then restated the purpose doctrine by quoting from *Desist,* "[W]e simply decline to extend the court-made exclusionary rule to cases in which its deterrent purpose would not be served." (422 U.S. 531, 538, 45 L. Ed. 2d 374, 382, 95 S. Ct. 2313, 2318.) *Peltier* plainly did not abandon the purpose doctrine of *Desist* in favor of the "imperative of judicial integrity" doctrine in determining whether the new pronouncement should be retroactively applied.

The purpose of the exclusionary rule has no bearing on guilt or innocence, and the question of the fairness of the trial is not involved. Thus exclusion retroactively applied does not serve to insure the integrity of the fact-finding process. The deterrent purpose of the exclusionary rule would not be furthered by applying the holding of *Franks* to searches and seizures that have long since been completed.

It may be argued that *Franks* did not announce a new

rule, in that the Supreme Court had never before considered the right to impeach the veracity of the sworn statements upon which a search warrant issued. Therefore, it could be argued, the nonretroactive holdings of the cases above discussed do not apply. However, in *Peltier* there had been no prior approval of roving border-patrol searches by the Supreme Court. *Almeida-Sanchez v. United States* (1973), 413 U.S. 266, 37 L. Ed. 2d 596, 93 S. Ct. 2535, was the first border-patrol-search case decided by the Supreme Court, and it held such warrantless searches unconstitutional. However, *Peltier* declines to apply this ruling retroactively, since there had been prior administrative and judicial approval of such procedure. *Peltier* held that the parties could reasonably rely on legal pronouncements emanating from sources other than the Supreme Court. 422 U.S. 531, 541-42, 45 L. Ed. 2d 374, 383-84, 95 S. Ct. 2313, 2319-20.

The law had been well established in Illinois in the cases previously cited that the veracity of the sworn statements supporting search warrants could not be impeached. Those cases reasoned that a judicial officer had found that there was probable cause to issue the warrant, and that the credibility of the affiant had been determined by the judicial officer issuing the warrant and should not be later impeached. Under Illinois law prior to *Franks,* the defendant's constitutional right had not been violated. The search and seizure had been conducted by officers in reliance upon a search warrant which, under the law of this State at that time, was valid and had been properly issued.

Thus, *Franks* was a departure from the prior law as it existed in this State. The officers conducting the search based on the warrant issued could rely on the prior legal pronouncements of this court just as *Peltier* held that the officers could rely on legal pronouncements emanating

from sources other than the Supreme Court.

A closely analogous situation to that in *Franks* was presented to the court of appeals in *United States ex rel. Pugh v. Pate* (7th Cir. 1968), 401 F.2d 6, wherein it was held that a fictitious name on an affidavit to a search warrant rendered the warrant invalid. In *United States ex rel. Smith v. Pate* (N.D. Ill. 1969), 305 F. Supp. 225, and in *United States ex rel. Mayfield v. Pate* (N.D. Ill. 1969), 305 F. Supp. 41, the district court refused to give retroactive application to the holding in *Pugh.*

Aside from the reasons stated above, the nature of the holding in *Franks* would seem to require that it be applied prospectively only. Although *Franks* held that an absolute ban on post-search impeachment of the search warrant affidavit is not justified, it did not hold that a defendant may in all cases challenge the veracity of the sworn statements. The opinion in *Franks* provides for evidentiary hearings on challenges to the truthfulness of the statements only if certain specific conditions are met. The court thus did not permit indiscriminate challenges to the truthfulness of such statements. It instead fashioned a procedural remedy by which defendants can challenge the sworn allegations. We have set out this procedure earlier in this opinion. These procedural requirements had not existed before *Franks,* and being procedural in nature, it would appear that the remedy should be applied prospectively. The remedy did not exist previously. It would be difficult, if not impossible, to apply this remedy to searches authorized by warrants issued prior to the holding in *Franks.*

Since we have held that the holding in *Franks* cannot be applied retroactively to this case, we need not consider whether defendant's allegations are such as to entitle him to a hearing under *Franks.*

For the above reasons the judgment of the appellate

court is reversed, and the judgment of the circuit court of Cook County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

MR. JUSTICE SIMON, dissenting:

I dissent, believing that the rule of constitutional law confirmed in *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, should be applied retroactively.

The majority observes that, traditionally, judicial decisions are applied retroactively. It notes, however, that changes in constitutional doctrine call for a case-by-case determination about retroactive application. (*Linkletter v. Walker* (1965), 381 U.S. 618, 14 L. Ed. 2d 601, 85 S. Ct. 1731.) Where the nation's highest court does an about face and overrules previous doctrine the decision should usually operate prospectively only, because police and defendants cannot be expected to have anticipated the new ruling. (See 3 W. LaFave, Search and Seizure sec. 11.5, at 694 (1978).) But *Franks* was not a departure from prior law, and there is no reason to abandon the traditional rule of retroactive application.

The United States Supreme Court first isolated the issue of whether a defendant may challenge an affidavit for a warrant, sufficient on its face to show probable cause, by producing evidence showing that the allegations in the affidavit are fabricated in *Rugendorf v. United States* (1964), 376 U.S. 528, 11 L. Ed. 2d 887, 84 S. Ct. 825. The court did not announce the constitutional rule in that case but assumed that the defendant could go beyond the four corners of the affidavit. (376 U.S. 528, 532, 11 L. Ed. 2d 887, 891, 84 S. Ct. 825, 828.) In the years following, litigants developed an impressive record of lower court decisions on the issue, and the consensus emerged that a defendant could challenge an affidavit that was facially sufficient by going beyond its four corners. See *United*

States v. Lee (4th Cir. 1976), 540 F.2d 1205; *United States v. Luna* (6th Cir. 1975), 525 F.2d 4; *United States v. Armocida* (3d Cir. 1975), 515 F.2d 29; *United States v. Belculfine* (1st Cir. 1974), 508 F.2d 58; *United States v. Damitz* (9th Cir. 1974), 495 F.2d 50; *United States v. Marihart* (8th Cir. 1974), 492 F.2d 897; *United States v. Carmichael* (7th Cir. 1973), 489 F.2d 983; *United States v. Thomas* (5th Cir. 1973), 489 F.2d 664; *United States v. Harwood* (10th Cir. 1972), 470 F.2d 322; *United States v. Dunnings* (2d Cir. 1969), 425 F.2d 836; *McConnell v. State* (1972), 48 Ala. App. 523, 266 So. 2d 328; *Davenport v. State* (Alaska 1973), 515 P.2d 377; *State v. Payne* (1976), 25 Ariz. App. 454, 544 P.2d 671; *Theodor v. Superior Court* (1972), 8 Cal. 3d 77, 501 P.2d 234, 104 Cal. Rptr. 226; *People v. Arnold* (1974), 186 Colo. 372, 527 P.2d 806; *State v. Boyd* (Iowa 1974), 224 N.W.2d 609; *State v. Melson* (La. 1973), 284 So. 2d 873; *Commonwealth v. Reynolds* (1977), 374 Mass. 142, 370 N.E.2d 1375; *State v. Luciow* (1976), 308 Minn. 6, 240 N.W.2d 833; *State v. Nanoff* (1972), 160 Mont. 344, 502 P.2d 1138; *State v. Baca* (N.M. App. 1973), 84 N.M. 513, 505 P.2d 856; *People v. Alfinito* (1965), 16 N.Y.2d 181, 211 N.E.2d 644, 264 N.Y.S.2d 243; *State v. Wright* (1973), 266 Or. 163, 511 P.2d 1223; *Commonwealth v. Hall* (1973), 451 Pa. 201, 302 A.2d 342; *State v. Sachs* (1975), 264 S.C. 541, 216 S.E.2d 501; *State v. Bankhead* (1973), 30 Utah 2d 135, 514 P.2d 800; *State v. Dupaw* (1976), 134 Vt. 451, 365 A.2d 967; *State v. Lehman* (1973), 8 Wash. App. 408, 506 P.2d 1316.

Some States clung to the rule that the defendant could not before trial challenge the veracity of the affidavits presented to the magistrate, even though it was highly unlikely that the defendant, or anyone, would be in a position to challenge the affidavits when they were presented to the magistrate. (See, *e.g., Liberto v. State* (1970), 248 Ark. 350, 451 S.W.2d 464; *State v. Lamb* (1972), 209 Kan. 453, 497 P.2d 275; *Tucker v. State* (1966), 244 Md.

488, 224 A.2d 111; *Wood v. State* (Miss. 1975), 322 So. 2d 462; *State v. Harris* (1975), 25 N.C. App. 404, 213 S.E.2d 414; *Brown v. State* (Okla. Crim. App. 1977), 565 P.2d 697; *Owens v. State* (1965), 217 Tenn. 544, 399 S.W.2d 507; *Phenix v. State* (Tex. Crim. App. 1972), 488 S.W.2d 759.) The Illinois Supreme Court adopted that rule in *People v. Bak* (1970), 45 Ill. 2d 140, and did not address the issue again except in *People v. Stansberry* (1971), 47 Ill. 2d 541, 544, a year after the *Bak* decision. This was prior to the large number of cases in other jurisdictions holding the other way. The *Bak* rule was, therefore, ripe for correction.

When *Franks* was decided, it was not an unexpected or radical shift in the preexisting law. Instead, as part of the normal, evolutionary process of constitutional law, the United States Supreme Court confirmed the rule the majority of jurisdictions had considered and adopted. *Franks* not only rejected the Illinois version of the rule, but vindicated the position taken by those who, like the defendant, had tried at trial and on appeal to convince Illinois to renounce the rule of *Bak*. To make *Franks* prospective only is to once again hold a defendant to the outmoded *Bak* rule in the face of overwhelming authority to the contrary. For these reasons, the traditional rule of retroactive application should apply.

But even under the majority's analysis there should be retroactive application. I agree that in determining retroactivity, the following factors should be considered: the purpose of the constitutional rule, the extent of reliance on past standards, and the effect on the administration of justice. (*Stovall v. Denno* (1967), 388 U.S. 293, 297, 18 L. Ed. 2d 1199, 1203, 87 S. Ct. 1967, 1970.) The principal emphasis is placed on purpose. But the purpose of the fourth amendment's exclusionary rule is twofold: to deter illegal police conduct and to prevent contamination of the judicial process with evidence seized in violation of

the Bill of Rights. (*Stone v. Powell* (1976), 428 U.S. 465, 484, 49 L. Ed. 2d 1067, 1081-82, 96 S. Ct. 3037, 3047-48.) I believe that the majority confuses the second justification, often referred to as the "imperative of judicial integrity" (1 W. LaFave, Search and Seizure sec. 1.1, at 17 (1978)), with a concern over the integrity of the fact-finding process. The latter is never at issue in a fourth amendment case; the former always is whenever courts are asked to be "accomplices in the willful disobedience of a Constitution they are sworn to uphold" (*Elkins v. United States* (1960), 364 U.S. 206, 223, 4 L. Ed. 2d 1669, 1681, 80 S. Ct. 1437, 1447). When both of the underlying policies of the exclusionary rule are considered, it is clear that the overall purpose of the rule is frustrated by denial of retroactivity.

What makes this case different from prior exclusionary-rule retroactivity cases is that it is not a simple good-faith violation of the Constitution which is at issue here. (See *United States v. Peltier* (1975), 422 U.S. 531, 536, 45 L. Ed. 2d 374, 380, 95 S. Ct. 2313, 2317.) This is not some technical reclassification or reformulation of doctrine far removed from the often violent and unpredictable world of day-to-day law enforcement. Instead we are dealing with an allegation that police intentionally misrepresented the facts in presenting an affidavit to a magistrate for a warrant so as to avoid the constitutional mandate of demonstrable probable cause. In simpler terms, this case asks us what is to be done if police officers are not truthful with the courts. What untruths have been told cannot now be untold, but if evidence seized as a consequence of official fabrication is used to convict Herbert Laws, the reputation of the courts of this State will be harmed, and mendacity will be exalted above due process.

Nor can police reliance justify prospective application only of *Franks*. The State argues that, in light of *Bak,* the search warrant was properly issued and police officers

could rely upon it. But as the appellate court noted in this case, "It is absurd to construe the *Bak* decision as an invitation to law enforcement agents to perjure themselves." (*People v. Laws* (1980), 82 Ill. App. 3d 417, 423.) The fourth amendment declares that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." That prerequisite would be meaningless if the oath could be perjured. Falsifying the warrant application is a fourth amendment violation, and the officer must have known it. No court has ever suggested otherwise. He must also have known that perjury is against public policy, a felony under Illinois law (Ill. Rev. Stat. 1979, ch. 38, par. 32—2). The *Bak* decision did not approve what the officer here allegedly did; it only established a procedural rule making it unlikely that the officer would be caught.

"I knew I was doing wrong, but I believed I would get away with it" is not the sort of reliance that courts need honor. To apply *Franks* only prospectively would lead police officers to believe that they can profitably violate the fourth amendment as long as they are imaginative enough to stay one jump ahead of the courts in the methods used. On the contrary, the exclusionary rule is a better deterrent when police expect that in the end the rule will catch up with clearly unconstitutional tactics whether or not they have yet been expressly condemned by the courts, and even if they have so far been quietly practiced successfully. The need for general deterrence of unconstitutional conduct, as opposed to deterrence merely of conduct already condemned by the courts, leads me to the view that we should apply *Franks* retroactively in this case.

As for the administration of justice, retroactive application of *Franks* will add little to the burdens of the trial courts. A well-established avenue already exists for raising all fourth amendment issues before trial in a motion to suppress, so no new procedures are necessary here. While

*Franks* put conditions on challenges to affidavits, the defendant has no objection to being subjected to those conditions and asks merely for the opportunity to file a motion meeting the *Franks* standards, an opportunity I think he should be given. In some instances the authorities may need to produce informers or other evidence they did not anticipate having to produce when the warrant was obtained. But, since the defendant has the burden of establishing the knowing falsity of the affidavit, his burden is likely to be at least as great as that of the police. And, if the defendant is unable to satisfy his burden, the police will not have to do anything.

An anomaly created by the decision here is that Jerome Franks received the benefit of the rule which bears his name but Herbert Laws will not. Both were tried in State courts following searches only a few months apart, both were in States adhering to the obsolete "four-corners" rule, both were stymied at trial by that rule in efforts to challenge the affidavit for the search warrant. Because Franks moved through the appellate process quickly, he was fortunate enough to get to the United States Supreme Court first and so won relief; Laws was doomed to a slower pace and is now to be denied relief. It is largely a matter of chance that the police were held to the command of the fourth amendment in *Franks* rather than here. As the late Mr. Justice Douglas put it, "Equal justice does not permit a defendant's fate to depend upon such a fortuity." *United States v. Peltier* (1975), 422 U.S. 531, 543, 45 L. Ed. 2d 374, 385, 95 S. Ct. 2313, 2320 (Douglas, J., dissenting).

I would hold the *Franks* rule retroactive. The Constitution does not require that those whose appeals have been decided be given another chance to relitigate fourth amendment issues (*Stone v. Powell* (1976), 428 U.S. 465, 49 L. Ed. 2d 1067, 96 S. Ct. 3037); so finality requires that we apply *Franks* only to those cases in which the issue

512

was raised or still can be raised in the trial court and which are pending there or on appeal.